EXHIBIT 19

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CRIMINAL PART
BERGEN COUNTY
DOCKET NO. 95-07-00889
A.D. #_____

STATE OF NEW JERSEY,              )
                                 )
             Plaintiff,          )
     vs.                         )          TRANSCRIPT OF
                                 )             TRIAL
JAMIE FARTHING,                  )
                                 )
             Defendant.          )

Place: Bergen County Courthouse
       Hackensack, NJ 07601

Date:  November 6, 1996

BEFORE:

    HONORABLE TIMOTHY J. SULLIVAN, J.S.C. AND JURY

TRANSCRIPT ORDERED BY:

    DEBORAH COLLINS, ESQ. (Office of the Public Defender)

APPEARANCES:

    PATRICIA BAGLIVI, ESQ. (Assistant Prosecutor)
    Attorney for the State of New Jersey

    JOHN WEICHSEL, ESQ.
    Attorney for the Defendant

Transcriber Dolores Hastings
KEMCO TRANS, INC.
P.O. Box 900
Clark, New Jersey 07066
(908) 382-8500

Video Recorded
Recording Operator, L. Ostapeck

2

1                          I N D E X

2    Colloquy                                    3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                               3

1          MS. BAGLIVI:  Tells the jury that she's in jail?

2          THE COURT:  You want that now?

3          MS. BAGLIVI:  Just -- just on the record, you know,

4    just so we --

5          THE COURT:  Somewhere along the line.

6          MS. BAGLIVI:  Right, that's fine.

7          MR. WEICHSEL:  Somewhere along the line, judge.

8    Judge, I reviewed --

9          THE COURT:  I pulled these right out of Harris.

10         MR. WEICHSEL:  Okay.  On question one, where you say

11   it is within the provinces of the jury to accept or reject a

12   psychiatric expert's opinion, could -- since I'm also using a

13   psychologist could you put a psychologist of psychiatric expert

14   opinion?

15         THE COURT:  Sure.  I'm going to read these things.

16         MR. WEICHSEL:  I understand that.

17         THE COURT:  I'm not going to hand them out.

18         MR. WEICHSEL:  I understand that. Then could you also

19   ask a question, would you be able to accept a psychologist's of

20   psychiatric expert opinion if you believe it to be meritorious,

21   because the question can you disregard it if you conclude that

22   (inaudible) -- we don't have -- you don't have any, you know,

23   you don't ask it the other way.

24         THE COURT:  Say that again, that -- question two or

25   what?

Colloquy                                    4

1      MR. WEICHSEL:  Well with question one, would you

2  disregard a psychiatric opinion if you conclude --

3      THE COURT:  Oh, I see --

4      THE COURT:  -- psychological --

5      THE COURT:  -- psychological.

6      MR. WEICHSEL:  Would you be able to accept a

7  psychologist's or a psychiatric expert opinion if you believe

8  it to be meritorious, or --

9      THE COURT:  It lacked merit.

10      MR. WEICHSEL:  What?

11      THE COURT:  I say there, "Would you be able to

12  disregard a psychiatric or psychological opinion if you

13  concluded that if lacked merit.

14      MR. WEICHSEL:  I'd like you to also ask in the

15  positive, would you be able to accept such an opinion if you

16  believe the -- you know, that it was meritorious.  I mean there

17  are some people that just don't accept psychology or

18  psychiatry.

19      THE COURT:  Yeah.

20      MR. WEICHSEL:  The think it's all bunk.

21      THE COURT:  I -- that's the next question.  "Do you

22  have any opinion or preconceived notion as or ideas about

23  psychiatry, psychiatry in general, psychology which would

24  hinder or otherwise influence your ability to evaluate

25  psychiatric testimony in a fair and impartial -- on a based

Colloquy                                          5

1    manner -- unbiased manner."

2              MR. WEICHSEL:  But it -- I think if you said would

3    they be able to accept --

4              THE COURT:  Unbiased manner.

5              MR. WEICHSEL:  It really doesn't say would they be

6    able to accept such a thing.  You know, you ask them would you

7    reject such an opinion and -- but you never really ask them

8    could they accept such an opinion.

9              MS. BAGLIVI:  But I think it does in the second

10   question.  I think --

11             THE COURT:  Well I'll do it, I have no problem with

12   that, or the other reverse is would you be able to accept it if

13   you felt it lacked merit -- that it -- it was meritorious.

14             MR. WEICHSEL:  Then on the next two where you have,

15   "Have you or anyone close to you ever sough the assistance of a

16   psychiatrist or a psychologist."  There are therapists that do

17   mental health services that are not psychiatrists or

18   psychologists such as --

19             THE COURT:  No, here's what we'll do with that, Mr. -

20   -

21             MR. WEICHSEL:  Yeah.

22             THE COURT:  Have you or anyone close to you ever

23   sought the assistance of a psychiatrist or psychologist, raise

24   your hands; all right, come up to sidebar and tell us.

25             MR. WEICHSEL:  Well what happens if somebody like a

Colloquy                                  6

1    therapist, like a social worker, is not a psychologist or

2    psychiatrist or they answer that no but they've had therapy?   I

3    -- could you just put in there or other type of therapist.

4              THE COURT:  Now you're talking about then -- why --

5    why do you want that question let me ask you.  You know, we've

6    got social workers, therapists here.  Well let's talk about

7    that, you were going to --

8              MR. WEICHSEL:  Yeah.  I have a social worker who I'm

9    going to plan to call to testify and I'm doing some research on

10   that.  I plan to have a memorandum to -- to you by -- by Monday

11   or Tuesday, judge -- well Monday's a holiday, by Tuesday on

12   that.

13             THE COURT:  It would -- now what you have informed us

14   is that you have a social worker who has done some

15   investigative work --

16             MR. WEICHSEL:  Investigative work.

17             THE COURT:  -- in this case and you're asking that

18   that -- that she or he be a test -- a witness.

19             MR. WEICHSEL:  Yes.

20             THE COURT:  And there's a question as to whether --

21   what can they testify to.

22             MR. WEICHSEL:  That's right, and I'm going to give

23   you --

24             THE COURT:  As an expert on what?

25             MR. WEICHSEL:  Well I'm going to be submitted a

Colloquy                                          7

1   memorandum on that, judge.

2              MR. WEICHSEL:  Yeah.

3              THE COURT:  All right, I'm just going to say have you

4   or anyone else in -- ever sought the assistance of a

5   psychiatrist or a psychologist or any other therapist.

6              MR. WEICHSEL:  Fine.

7              THE COURT:  Then family therapist.

8              MR. WEICHSEL:  It's all mental health related, judge.

9              THE COURT:  Yeah, I have no problem with that.

10             MR. WEICHSEL:  Some people don't even know what the

11  status is.

12             THE COURT:  Anything else with regard to this?

13             MR. WEICHSEL:  I guess then the last question you put

14  in the word therapist too then I guess.

15             THE COURT:  Well that's again with the fact that --

16  that you or someone close to you sought the assistance or a --

17  of a psychiatrist or psychologist effect or influence your

18  judgment in this case should psychiatric testimony be

19  presented.  If they say yes well then we call them sidebar --

20             MR. WEICHSEL:  Okay.

21             THE COURT:  -- and say well how are they going to

22  affect you?

23             MR. WEICHSEL:  That's fine, judge, okay.

24             THE COURT:  If they say no, that's it, we'll just use

25  them.  Anything else?

Colloquy                           8

1              MR. WEICHSEL:  Judge, I have a -- I have a witness

2   list.

3              THE COURT:  What did you do, blow a fuse or what?

4              MR. WEICHSEL:  No.

5              MS. BAGLIVI:  Ut-oh, is that mine or yours?

6              MR. WEICHSEL:  It must be the microphone.

7              MS. BAGLIVI:  It's your microphone?

8              MR. WEICHSEL:  It works.

9              THE COURT:  Still you're not going to get an

10  adjournment.

11             MR. WEICHSEL:  What?

12             THE COURT:  You're not going to get an adjournment.

13             MR. WEICHSEL:  No.

14             THE COURT:  Even if you kick out the speaker.

15             MR. WEICHSEL:  You know, it's just -- I just have to

16  remember it's there.

17             THE COURT:  All right, I have -- do you have a list

18  of his witnesses here?

19             MS. BAGLIVI:  Yes, judge, I can it to Lucy, I gave

20  her copies --

21             THE COURT:  His -- his.

22             MR. WEICHSEL:  Yeah.

23             MS. BAGLIVI:  Oh, I saw it.

24             THE COURT:  I think there's some on your list; Jason

25  --

Colloquy                                   9

1        MS. BAGLIVI:  Farthing.

2        THE COURT:  Is he on your list?

3        MS. BAGLIVI:  He might be on my list also, judge.  I

4   put everybody's name that might be --

5        THE COURT:  You have Kathy, Paul Farthing.  You don't

6   have Jessie and Jason?

7        MR. WEICHSEL:  No.

8        THE COURT:  All right, and then you have Billy -- oh,

9   that's Feinberg?

10       MR. WEICHSEL:  Billy Feinberg, she's a social worker.

11       THE COURT:  That's the social worker.

12       MR. WEICHSEL:  Okay.

13       THE COURT:  And Jonathan --

14       MR. WEICHSEL:  Kainman, K-A-I-N-M-A-N.

15       THE COURT:  Okay.  Did you go to school in New York

16   City?

17       MR. WEICHSEL:  No, I went to school in Teaneck,

18   judge.

19       THE COURT:  Yeah; see, if you went to New York you'd

20   have penmanship that I can understand.  And if you went to

21   parochial school you'd even have a real Palmer method.

22       Jonathan Klineman from Philadelphia, and Arnolo --

23       MR. WEICHSEL:  Arnoldo Apolito.

24       THE COURT:  Oh, Apolito, sure, okay, doctor.  All

25   right, you can bring up the -- should we bring up the

1  defendant?  Let's bring her up and I'll mention to her the fact

2  that all -- I'll take a plea anytime during the trial.

3          MS. BAGLIVI:  Judge, this is going to be a good one.

4          THE COURT:  I know it's a good one.  I know -- I

5  know, but --

6          MS. BAGLIVI:  It's interesting.  It's not --

7          MR. WEICHSEL:  I mean Patty wants -- Patty wants to

8  show that videotape in the worst way.

9          THE COURT:  I want -- we're not going to use that

10 tape.

11         MR. WEICHSEL:  What?

12         MS. BAGLIVI:  Well we are the beginning of it, the

13 computer stuff.  It has my victim's computer company on it and

14 then you said you would tell -- I would stop it at that point

15 and you would tell the jury that the rest of the videotape

16 depicts, you know --

17         THE COURT:  I did?  I didn't say that at all, I said

18 you were going to look at it.

19         MS. BAGLIVI:  Yeah, he did look at it.

20         MR. WEICHSEL:  It's gross.  That's all I can say,

21 it's gross.  It has nothing to do with my client.

22         THE COURT:  I don't know how we're going to do that.

23                         (PAUSE)

24         THE COURT:  Ms. Jamie Rene Farthing, is that right?

25         THE DEFENDANT:  Yes.

Colloquy                              11

1           THE COURT:  All right, good morning, Ms. Farthing.

2  We're ready to begin this trial wherein you're charged with

3  various charges of kidnapping and murder, weapons charges.  And

4  there have been offers made by the prosecution with regard to a

5  plea.  I just want to make sure you understand that my -- the

6  information I have received that you have been unable to reach

7  an agreement as to that plea offers and it's your desire to go

8  to trial on that, is that correct?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right, we will begin picking a jury

11  here today and you have -- you have discussed this with your

12  attorney?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And it's your desire to

15  continue to go to trial?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right, you know the ramifications of

18  possible punishment that may be --

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  -- imposed as a result if you're found

21  guilty?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  You do?  All right.  All right, I'm going

24  to step out of the courtroom and I'll have the panel brought

25  in.

1      THE COURT OFFICER:  They're all ready, Your Honor.

2      THE COURT:  Yeah.  Do you have hand cuffs on?

3      THE COURT OFFICER:  No, she has nothing on.

4      THE COURT:  Okay.  And have the panel brought in and

5 then when they are brought in I will then return.  Let me just

6 get my books out here.

7                        (PAUSE)

8      THE COURT:  Good morning, ladies and gentlemen,

9 please be seated?  Well yesterday was Election Day and it was

10 the -- I hope most of you exercised your right, the precious

11 rights you have in this country to -- to vote.  Today you'll

12 have another precious right, you'll serve as jury -- as jurors.

13 The two rights we have with a jury trial that citizens have

14 available to them and also voting.  So you're participating in

15 the very heart of our republic.  My name is Timothy J.

16 Sullivan, and I'm a Judge of the Superior Court of the State of

17 New Jersey.

18      Now, ladies and gentlemen, you have been brought here

19 today so that we may select a jury for this case which is

20 entitled the State of New Jersey versus Jamie Farthing, it's

21 F-A-R-T-H-I-N-G is the way you spell the last name. And we are

22 about to begin a process called a voir dire.  And the purpose

23 of a voir dire is very simple, it's to obtain a jury which is

24 able to hear this case without any bias, any prejudice, or any

25 preconceived ideas.  In short, the idea is to select a fair

1   jury.

2              Now, members of the panel, we are here to try the

3   matter in dispute between the State of New Jersey and Jamie

4   Farthing.   This is a criminal case and there are various

5   charges.   There are charges of kidnapping, there's charges of

6   murder, charges involving weapons.   I'll read you the

7   indictment which was handed up July of 1995 by a Grand Jury.

8              The first count -- that's the first charge, there are

9   various charges here now -- the Grand Jurors charged that Jamie

10  Farthing on or about August 4 of 1994 in Hackensack did

11  unlawfully confine Robert Hippman, H-I-P-P-M-A-N, for a

12  substantial period for purpose of facili -- to facilitate the

13  commission of a crime or flight thereafter and did fail to

14  release the said Robert Hipp -- Hippman unharmed and/or in a

15  safe place prior to apprehension, and that's contrary to the

16  statute 2C:13.

17             The second count of the indictment charges that Jamie

18  Farthing, on or about August 4th of 1994 in Hackensack in the

19  course of committing a theft did use force upon Robert Hippman

20  while armed with a deadly weapon con -- contrary to provisions

21  of 2C:15-1, that's called Armed Robbery.

22             Count three, Jamie Farthing on or about August 4 of

23  1994 in Hackensack is charged that within the jurisdiction of

24  this court she knowingly and unlawfully did possess certain

25  weapon to wit an H&R 32 caliber revolver and a Rossi 38 caliber

1   revolver with the purpose to use it unlawfully against the

2   person or property of another contrary to the statute 2C:39-4.

3            The fourth charge, the fourth count, the Grand Jurors

4   charge that Jamie Farthing on or about August 4, 1994 in

5   Hackensack, that she knowingly and unlawfully did possess

6   certain weapons to wit an H&R 32 caliber revolver and a Rossi

7   38 caliber revolver without having obtained a permit to carry

8   same as provided by the statute.

9            The next count is that Mr. -- Ms. Farthing, on the

10  following day, August 5th 1994, in the Borough of Edgewater is

11  charged that she did purposely or knowingly cause the death

12  with -- or serious bodily injury resulting in the death of

13  James Polites contrary to the provisions of -- excuse me --

14  2C:11-3A.

15           The next count is Ms. Farthing, Jamie Farthing, on or

16  about August 5, 1994 in Edgewater did engage in the commission

17  of the crime of kidnapping during which she or another caused

18  the death of James Polites contrary to the provisions of 2C:11.

19           The next count, Jamie Farthing on August 5, 1994 in

20  the Borough of Edgewater did engage in the commission of the

21  crime of armed robbery during which she or another caused the

22  death of James Polites contrary to the provisions of 2C:11-3A.

23           The next count is that James Farthing on or about

24  August 5, 1994 in the Borough of Edgewater, she's charged that

25  she did unlawfully confine James Polites for a substantial

1   period with purpose of facilitate the commission of a crime or

2   flight thereafter and/or inflict bodily injury on James Polites

3   and did fail to release the said James Polites unharmed and/or

4   in a safe place prior to apprehension, that's contrary to the

5   statute.

6            Is it Polites or Polites?

7            MS. BAGLIVI:  Polites.

8            THE COURT:  It's Polites, I'm sorry; that's James

9   Polites.  It's P-O-L-I-T-E-S, it's pronounced Polites.

10           The next count is that Jamie Farthing, on or about

11  August 5 of 1994 in the Borough of Edgewater is charged that in

12  the course of committing a theft she did use force upon James

13  Polites and/or commit the crime of murder upon James Polites

14  while armed with a deadly weapon contrary to the statute.

15           The next count is that Jamie Farthing is charged that

16  on August 5, 1994 in the Borough of Edgewater, she's charged

17  with knowingly and unlawfully she did possess certain weapons

18  to wit an H&R 32 caliber revolver and Rossi 38 caliber revolver

19  with the purpose to use if unlawfully against the person or

20  property of another.

21           And the final count, James Farthing is charged that

22  on August 5 of 1994, that she knowingly and unlawfully did

23  possess these weapons without having obtained a permit to carry

24  same contrary to the statute.

25           Now that's the case.  Now I realize that jury service

1   may be new to some of you so a few preliminary remarks may

2   prove to be helpful.

3              Now the first step in a jury trial is the selection

4   of the jury.  Now this process is important because both the

5   State and the defendant are entitled to jurors who are

6   impartial and agree to keep their minds open until the verdict

7   is reached.  Jurors may be as free as human -- or they must be

8   as free as humanly possible from bias, prejudice or sympathy

9   and must not be influenced by preconceived ideas.

10             Those of you selected as jurors on this case shall

11  serve as judges of the facts.  In other words, you will listen

12  to the testimony of witnesses, examine any physical evidence

13  introduced and thereafter determine the facts.  I am the judge

14  of the law and at the conclusion of this matter after the

15  evidence has been presented and counsel have made their closing

16  arguments to you I will tell you what the law is and your must

17  apply that law to the facts in order to reach a fair an an

18  impartial verdict.

19             Now although you may be qualified to serve as a juror

20  in most cases, there may be something that could disqualify you

21  in this case or make it embarrassing for you to serve.  In

22  order to learn this I will have to ask you questions.  Now

23  please understand that the questions I will ask you, they are

24  for a legitimate purpose and they're not to simply pry into

25  your personal lives or affairs. Do not hesitate to speak your

1   mind honestly and plainly.   If it very important that you

2   answer each question fully and truthfully and keep in mind that

3   there is no right or wrong answer.   Truthful and honest answers

4   are necessary so that a fair and an impartial jury can be

5   selected.

6          Now, ladies and gentlemen, as we mature we all to

7   some extent develop certain biases and prejudices and fixed

8   opinions and views.   We develop these from our families, from

9   other around us, the media and from our every day experiences.

10  Now you are entitled to be who you are and to feel and think

11  about things as you do.   It is important to recognize any

12  biases, prejudices, fixed opinions and views that you may have

13  and to disclose them to me during jury selection.   If for any

14  reason my questions do not cover why you should or you would

15  not be able to listen with an open mind to the evidence in this

16  case or in -- or you're unable to reach a -- a fair and a

17  impartial verdict it is necessary that you volunteer this

18  information to me when you are questioned.   If at any time

19  during the jury selection process you wish to discuss anything

20  with me concerning your ability to serve as a juror, you raise

21  your hand and I will speak to you outside the presence of the

22  other jurors but in the presence of the attorneys.

23         After I have questioned each of you, you may be

24  excused as a juror by me if in my opinion there is a valid

25  reason why you should not serve.   Each attorney may also excuse

1  a limited number of jurors without giving any reason for doing

2  so.  In the event you are excused please do not consider this

3  an insult or take it personally, it is merely part of the

4  process employed in selecting a jury as permitted by the law.

5          Now I have given you the -- a brief explanation as to

6  the charges.  Our best estimate as we discussed the length of

7  this particular case, it should take a couple of weeks.  I'll

8  tell you what we anticipate so we understand.  We have a -- we

9  hope to start the case either today or tomorrow and be here

10 Friday.  On Monday there's a Veteran's Day -- it's a holiday,

11 it's a state holiday and the court's are closed, so court will

12 be Tuesday, Wednesday and Thursday of next week. The following

13 week is the 18th, 19th, 20, 21, and now we're into the Thursday

14 before the Thanksgiving week. We hope to be finished by that

15 Thursday or at least Friday.  If we're not we'll go into the

16 Thanks -- the beginning of the Thanksgiving week which is

17 Monday and Tuesday, the 25th and 26th.  We should be finished

18 with the case by that time.  If everything falls the way we

19 hope that it falls we should be finished before Thanksgiving,

20 and that's the length of the case.

21          Now, on Friday, the 15th, I have other matters

22 scheduled.  On the 22nd of November I also have other matters

23 scheduled; not this Friday, this Friday we will have testimony.

24 So it's three weeks from today; today is Wednesday, almost --

25 actually two weeks, from the 6th to the 21st and possibly if we

1    don't get everything done we'll go into Monday and Tuesday of -

2    - of Thanksgiving week, that's the length of the trial.

3              Let's talk about the indictment.  You see the

4    indictment that I read to you, the charges against or have been

5    filed by the Grand Jury regarding Ms. Farthing is not evidence

6    of any guilt.  It's the -- the indictment is a step in the

7    procedure to bring the matter before the court and jury for the

8    -- for a jury's determination, ultimate determination as to

9    whether she is guilty or not guilty of these charges.  And that

10   has to be decided on what you hear in this courtroom, nowhere

11   else.  So that fact that there's a indictment doesn't mean that

12   there's any evidence of guilt. Again, I talked about the system

13   we live under.  We had Election Day yesterday and now jury

14   duty, one of -- one of the principles of the trials in this

15   country is that a defendant is presumed to be innocent.  She

16   has pleaded not guilty to the charge and then she is presumed

17   to be innocent.  Now unless each and every essential element of

18   the offenses that I mentioned are proved beyond a reasonable

19   doubt, the defendant may be -- must be found not guilty of

20   these charges, and each charge will be considered separately.

21             Now the burden of proving each element of the charge

22   beyond a reasonable doubt rests upon the State and that burden

23   never shifts to the defendant.  It is not the obligation or the

24   duty of the defendant in a criminal case to prove her innocence

25   or offer any proof relating to her innocence.  And a reasonable

The Court Addresses Prospective Jurors        20

1  doubt is an honest and reasonable uncertainty as to the guilt

2  of the defendant existing in your minds after you have given

3  full and impartial consideration to all of the evidence.  Now

4  that doubt may arise from the evidence itself or it may arise

5  from the lack of evidence.

6           Now you will have to apply the law as I give it to

7  you and regardless of your own personal feelings about it.

8  Again I remind you since this is a criminal case your verdict

9  re -- any verdict returned by jurors must be unanimous.  That

10  means simply that all 12 jurors who may be selected to

11  deliberate must agree upon any verdict returned to the court.

12           I'm going to introduce you to the attorneys involved,

13  I'm going to introduce you to the defendant, and then I'm going

14  to read a list of potential witnesses, possible witnesses.

15  That doesn't mean all of them will be called, but there may --

16  they may be call, there may be references made to them during

17  the trial and when I read those names to you if you recognize

18  any of them you make a mental note of it and if you're called

19  upon to serve as a juror in the case let us know how you

20  recognize that name and we'll discuss it at that time.  First

21  I'm going to introduce you to the Prosecutor in this case who

22  is going to be representing the State of New Jersey throughout

23  these proceedings, Ms. Patricia Baglivi.  Please stand, Ms.

24  Baglivi?

25           MS. BAGLIVI:  Good afternoon, ladies and gentlemen,

1  my name is Patricia Baglivi and I'm Assistant Prosecutor here

2  in Bergen County.

3              THE COURT:  Thank you.  Now I'm going to ask the

4  attorney for Ms. Farthing to arise, a Mr. John Weichsel.

5  Introduce yourself -- and now that's Mr. Weichsel, and

6  alongside Mr. Weichsel is Ms. Farthing.

7              MR. WEICHSEL:  Good afternoon, my name is John

8  Weichsel, I'm an attorney here in Bergen County.  This young

9  woman next to me is Jamie Farthing and she -- she is from

10 Conyers, Georgia.

11             THE COURT:  Thank you.  I'm going to read you list of

12 names now, ladies and gentlemen.  Listen for them, if you

13 recognize any of them make a mental note and then tell us about

14 it when we -- if we call your name.

15             There's a John Acunto, A-C-U-N-T-O, of Hohokus, New

16 Jersey; a Loopey Anderson of Union City, Georgia; Luke Anderson

17 of Union City, Georgia; Nate Batchi -- Bachino and Natali, it's

18 -- the nickname I guess is Nate, N-A-T-E, Bachino of Fairview,

19 New Jersey; Tina Ball of Fair -- of Fort Lee, New Jersey; Ann

20 H. Hunter of Conyers, Georgia; Richard Stanford of Scotch

21 Plains, New Jersey, Elizabeth Yancey of Long Island City in New

22 York, Ruth Kehoe and Edith Mankowitz -- Man -- Mankowski, both

23 of whom are from the Carteret Saving Bank in Oradell, New

24 Jersey, they're employed there; Carmella Lesterstock and

25 Leonard Menachino of Valley -- Valley Bank in Bergenfield;

```
 1   Elsie Alexander of Albany, New York, Kathy Farthing of Conyers,
 2   Georgia; Paul Farthing of Conyers, Georgia; Jason Farthing of
 3   Conyers, Georgia; Jessie Farthing of Conyers, Georgia; Karen
 4   Marie Hedley of Little Ferry, New Jersey; Robert Hippman,
 5   alleged victim as mentioned in the indictment of Hackensack,
 6   New Jersey; Iasuki Isamoro of New York City; Ethan Mayann,
 7   M-A-Y-A-N-N, of Englewood, New Jersey; Karen Ortega of
 8   Demerest, New Jersey; Edward Cummer, C-U-M-M-E-R, of Conyers,
 9   Georgia; Myonn Suh I think it's pronounced, the last name is
10   S-U-H, Byone Suh and Ching Hwa, H-W-A, Suh, both of Hempstead,
11   New York; Thomas Delgado of the Bronx, New York; Vincent Lupino
12   of Edgewater, New Jersey; Leonard Marshall of Boca Raton,
13   Florida; William Mooney of Little Falls, New Jersey; Magda
14   Molena Rahey or Rahey or Brooklyn, New Jersey -- I'm sorry,
15   Brooklyn, New York; Al Sambogna of Edgewater, New Jersey;
16   Donald Sposa of Fort Lee, New Jersey; Paul Bishoff of
17   Eatontown, New Jersey; Elizabeth Deagas of Edgewater, New
18   Jersey; George Polites of Fort Lee, New Jersey; Stella Polites
19   of Fort Lee, New Jersey; Peter Polites of Fort Lee, New Jersey;
20   Michelle Jaris of New Rochelle, New York; Max Calmanowitz of
21   New York City; Mario Jakobeno of Fort Lee; Dr. Steven
22   Shemmering -- Shimmering of the Department of Psychiatry in the
23   New Jersey Medical School in Newark; William S. Woodkich or
24   Wookitch of the Bell Atlantic Nynex Mobil, that's from Bed --
25   Bedminster, New Jersey; Steven Mallon of -- what's that,
```

1   Chelsea Mini Storage of New York City.

2           And now there is -- there are also a list of police

3   officers and members of the Prosecutor's Office who may be

4   testifying in this case; Sergeant -- I'm sorry, Senior

5   Investigator Terrance Alver -- these are from the Prosecutor's

6   Office here -- Sergeant Thomas Goldrich -- Goldrick, I'm sorry;

7   Senior Investigator Frank Kelaher; Lieutenant Roger Cane;

8   Senior Investigator Carlos Rodriquez; Senior investigator John

9   Hardigan; Senior Investigator Vincent Markowski; Sergeant

10  Anthony D'Augostino -- Augustio -- Augustine, there's no O

11  there; Sergeant Anthony D'Augustine; Investigator Joseph

12  Harniak; and Lieutenant Michael Trahey.

13          From the Narcotics Task Force of Bergen County,

14  Investigator Salvatore Urato.

15          Rockdale County Sheriff's Department, I believe that

16  would be -- that's in Georgia?  Rockdale County in Georgia,

17  Sheriff's Department, Investigator Michael Sellers of Conyers,

18  Georgia.

19          United State's Marshal's Metro Fugitive Squad from

20  Atlanta Georgia is Investigator W.S. Robinson; Investigator

21  Orlando Whitehead; Investigator Bill Smith; Investigator Efrim

22  Davis.

23          From the Hackensack Police Department, Lieutenant

24  John Hines; Detective Sergeant Fred Poglisi; Detective Sergeant

25  Steven Molger; Detective Sergeant Huge Farley; and Police

The Court Addresses Prospective Jurors      24

1  Officer Scott Sibel.

2          From the Bergen County Sheriff's Department,

3  Lieutenant Anthony Rovenda; Detective Chester Robinson;

4  Sheriff's Officer Henry Barca; Sheriff's Officer John Kennedy;

5  Detective Sergeant John Murphy; Detective Lieutenant Floyd

6  Dempsey; Corrections Officer Brian Shaw.

7          The Bergen County Police Department, Detective Robert

8  Depalmer.

9          From the Edgewater Police Department, Police Officer

10  Don Wright; Detective Sergeant Robert Bailey; Police Officer

11  Henry Webber; Police Officer Brian Gilmartin; Sergeant Dominick

12  V. Ray; Police Officer Edward Ring.

13          From the New York City Police Department, Detective

14  Frank Caruso.

15          From the F.B.I. Laboratory from Washington, D.C.,

16  George Scaluba.

17          From the Drug Enforcement Agency Task Force Detective

18  Lisa Barienzo; Detective Sal Palumbo.

19          From Suffolk County Police Department, Detective

20  William Donahue; Detective McAlvin; Detective Sergeant Edward

21  Fandrey, F-A-N-D-R-E-Y; Detective Robert J. Anderson.

22          From the New York City Police Department, the Midtown

23  South Robbery Unit, Lieutenant Arthur Monahan; Sergeant Pat

24  McAndrew; Sergeant Al Reganhard; Sergeant Jim Martin; Detective

25  Al Throl; Detective Richard Briacky, Detective Joseph Deanin;

1    Detective Michael Duggan; and Detective Tommasi.

2              And from the Forensic Lab of the New York -- I'm

3    sorry, the New Jersey State Police Laboratory there's

4    Christopher H. Uber, forensic scientist -- senior forensics

5    scientist; Lowell R. Mark, senior forensic scientist; Joyce A.

6    Poliniak of the -- she the -- also a senior forensic scientist;

7    Nancy Wilkens, a document examiner.

8              New Jersey State Police in Totowa, New Jersey,

9    Detective James R. Molinari -- Molinaro.

10             From the Bergen County Medical Examiner's Office, a

11   Dr. Sunandan Singh.

12             The Suffolk County Medical Examiner's Office, Dr.

13   Gweyn Holliman.

14             New York City Ballistics Lab in New York City Police

15   Department, Police Officer Joseph Rimerez.

16             And then the Suffolk County Division of Medical,

17   Legal Investigations and Forensic Scientists, Jeffrey Lubor, an

18   analyst; Robert Bowman, an analyst; Linda Sherlock Reich, a

19   analyst; and Thomas D. Zaveski, Z-A-V-E-S-K-I, an analyst.

20             Also, a Billy Fineberg, a social worker from Nanuet

21   New Jer -- New York; Joseph Kainman, psychologist from

22   Philadelphia; and a Arnoldo Apolito, a psychiatrist/medical

23   doctor from Montclair, New Jersey (names are phonetic).

24             Now that's the list.  That doeesn't mean everybody's

25   goign to be called, but that's the list of potential witnesses.

The Court Addresses Prospective Jurors     26

1      All right, ladies and gentlemen, now as your name is

2  called I'm going to ask that you come up and set yourself in

3  this jury box.  Now the way you get up here is when your name

4  is called you -- those of you on my right side or on the left

5  side of the courtroom find your way up around the back.  See

6  where my officer is standing?  You come around the back and

7  he'll show you where to go.  So all of you figure it out now,

8  if you name is called, how you're going to get up here without

9  climbing over everybody, all right?  The front -- the first row

10 there of seats is empty for those of you who want to slip

11 through there; that's why it's empty, so that you can kind of

12 get up there.  But you can come up the middle aisle and step

13 over that way out that way or around this way. Do not come into

14 the well of the court, just go around the back, that's the way

15 you come in, all right?

16      When your name is called now just answer here, let me

17 know you're here, and then proceed up to where my officer is.

18 After you get through the first or second then you'll -- it

19 becomes obvious how -- how it will work, all right?

20                    (JURY SELECTION)

21            *              *              *

22

23

24

25

27

1                          <u>CERTIFICATION</u>

2          I, Dolores Hastings, the assigned transcriber, do

3  hereby certify the foregoing transcript of proceedings in the

4  Bergen County Superior Court, Law Division, Criminal Part, on

5  November 6, 1996, on tape number 179-96, index number from

6  01:05:18 to 01:54:23, is prepared in full compliance with the

7  current Transcript Format for Judicial Proceedings and is a

8  true and accurate non-compressed transcript of the proceedings

9  as recorded.

10

11  _____              _____417_____

12  Dolores Hastings                       AOC Number

13

14  KEMCO TRANS, INC.                      6/10/97

15  Agency Name                            Date

16

17

18

19

20

21

22

23

24

25