EXHIBIT 20

6T

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CRIMINAL PART
BERGEN COUNTY
DOCKET NO. 95-07-00889
A.D. #_____

STATE OF NEW JERSEY,    )
                      )
         Plaintiff,   )
   vs.               )       TRANSCRIPT OF
                      )         TRIAL
JAMIE FARTHING,      )
                      )
         Defendant.   )

Place: Bergen County Courthouse
      Hackensack, NJ 07601

Date:  November 7, 1996

BEFORE:

    HONORABLE TIMOTHY J. SULLIVAN, J.S.C. AND JURY

TRANSCRIPT ORDERED BY:

    DEBORAH COLLINS, ESQ. (Office of the Public Defender)

APPEARANCES:

    PATRICIA BAGLIVI, ESQ. (Assistant Prosecutor)
    Attorney for the State of New Jersey

    JOHN WEICHSEL, ESQ.
    Attorney for the Defendant

Transcriber Dolores Hastings
KEMCO TRANS, INC.
P.O. Box 900
Clark, New Jersey 07066
(908) 382-8500

Video Recorded
Recording Operator, L. Ostapeck

2

1                        <u>I N D E X</u>

2    The Court Addresses Prospective Jurors                    3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Court Addresses Prospective Jurors      3

1        THE COURT:  Are we ready to proceed, counsel?

2        MS. BAGLIVI:  Yes.

3        THE COURT:  All right, good morning, ladies and

4   gentlemen, my name is Timothy J. Sullivan and I am a Judge of

5   the Superior Court of the State of New Jersey.  Now you have

6   been brought here today so that we may select a jury for this

7   case which is entitled the State of New Jersey versus Jamie

8   Farthing -- Farthing, F-A-R-T-H-I-N-G.

9        We are about to begin a process called the voir dire,

10  and the purpose of the voir dire is very simple; it is to

11  obtain a jury which is able to hear this case without any bias,

12  prejudice or preconceived ideas.  In short, the idea is to

13  select a fair jury.

14        Now, members of the panel, we are here to try this

15  matter in a dispute between the State of New Jersey and Jamie

16  Farthing.  Now this is a criminal case and there are a number

17  of charges.  The first charge again is -- I have a -- an

18  indictment here and I'll talk to you about an indictment in a

19  moment.  The first charge is a charge of kidnapping which the

20  State alleges that Jamie Farthing was part of a kidnapping on

21  August 4th 1994 in Hackensack where she is charged with

22  unlawfully confining a Robert Hippman.  Now if any of you

23  recall this case -- there was some publicity on it -- if you

24  recall it, if I trigger a memory by mentioning the charges here

25  I do not want you to tell the person sitting next to you, all

The Court Addresses Prospective Jurors     4

1  right?  Because if there is publicity and you remember reading

2  about the case you may not qualify as a juror.  There's no

3  sense disqualifying the person sitting next to you by telling

4  him what you know. All right?  You understand my -- my point?

5  There has been publicity and it's in the papers -- it was in

6  the papers a couple years ago and some of you may recall

7  reading about, some of you may not have read about it.  So if

8  someone sitting there recalls it keep it to yourself.  Now when

9  -- if you're called upon to come up you can tell us what --

10 what you recall and how it will affect you, all right?

11        Now Ms. Farthing is -- is charged with the kidnapping

12 of Hipp -- of Robert Hippman and that is the unlaw confinement

13 of Mr. Hippman for a substantial period with the purpose of

14 facilitate the commission of a crime or flight thereafter and

15 did fail to release Mr. Hippman unharmed or in a safe place

16 prior to apprehension, and that's contrary to the statute.

17 That's count one.  Each count is a -- a different charge.

18        The second count is that Ms. Jamie Farthing is

19 charged that on August 4th 1994 in Hackensack in the course of

20 committing a theft did use force upon Robert Hippman while

21 armed with a deadly weapon; that's contrary to the statute.

22        She's further recharged in the next count, Jamie

23 Farthing on August 4, 1994 in Hackensack is charged with

24 knowingly and unlawfully did possess a certain weapon to wit an

25 H&R 32 caliber revolver and a Rossi 38 caliber revolver with

The Court Addresses Prospective Jurors     5

1    the purpose to use it unlawfully against the person or property

2    of another which is contrary to the statute.

3              The next count that Jamie Farthing on August 4, 1994

4    in Hackensack, she's charged with knowingly and unlawfully did

5    possess certain weapons to wit an H&R 32 caliber revolved and a

6    Rossi 38 caliber revolver without having obtained a permit to

7    carry same as provided by the statute.

8              She's further charged that on the next day, August 5,

9    1994 in the Borough of Edgewater she did purposely and

10   knowingly cause the death and serious bodily injury resulting

11   in the death of James Polites contrary to the provisions of the

12   statute.

13             The next count, Jamie Farthing is charged with on

14   August 5, 1994 in Edgewater -- the Borough of Edgewater -- did

15   engage in the commission of the crime of kidnapping during

16   which she and/or another caused the death of James Polites

17   contrary to the provisions of the statute.

18             The next count, Jamie Farthing is charged with on

19   August 5, 1994 in Edgewater, she's charged that she did engage

20   in the commission of the crime of armed robbery during which

21   she or another caused the death of James Polites contrary to

22   the statute.

23             The next count that James -- Jamie Farthing on August

24   5, 1994 in Edgewater, she's charged with she did unlawfully

25   confine James Polites for a substantial period with purpose to

1  facilitate the commission of a crime or flight thereafter

2  and/or inflict bodily harm on James Polites and did fail to

3  release the said James Polites unharmed and/or in a safe place

4  prior to apprehension; that's contrary to the statute.

5      The next count, Ms. Jamie Farthing on August 5, 1994

6  in Edgewater, she's charged with committing theft -- in the

7  course of committing a theft did use force upon James Polites

8  and did -- and/or committed the crime of murder upon James

9  Polites while armed with a deadly weapon contrary to the

10  statute.

11      The next count is that Jamie Farthing is charged

12  with, on August 5, 1994 in Edgewater with possession of a

13  certain weapons, it's a 32 caliber revolver and a 38 caliber

14  revolver with the purpose to use it unlawfully against the

15  person or property of another.

16      And finally, she's charge also, James Farthing, on

17  August 5, 1994 in Edgewater with possession of a 32 caliber

18  revolver and a 38 caliber revolver without having obtained a

19  permit to carry same.

20      Now those are the charges.  So we have two charges of

21  kidnapping, we have a murder charge, we have armed robbery, we

22  have possessions of weapons.  So there's a number of charges.

23      Now, I realize that jury service may be new to some

24  of you, so a few preliminary remarks may prove to be helpful.

25  I know you're all down there this morning and they showed you

1   the film and you all know what it's all about.  Now let me just

2   go back over what we're going to do here in this courtroom.

3          We've been in the process of picking a panel in this

4   matter, we started yesterday.  There are some jurors that are

5   down in my court -- in my jury room and they will be called up

6   later on once we get past the preliminary -- my preliminary

7   remarks, because the first step in a jury trial is to select a

8   jury.  Now this process is important because both sides, both

9   the State and the defendant are entitled to jurors who are

10  impartial and agree to keep their minds open until a verdict is

11  reached.  Jurors must be as free as humanly possible from bias,

12  prejudice or sympathy and must not be influenced by

13  preconceived ideas.

14         Now those of you selected as jurors on this case

15  shall serve as jurors of the facts.  In other words, you will

16  listen to the testimony of witnesses, you will examine any

17  physical evidence introduced and thereafter determine the

18  facts.  I am the judge of the law.  At the conclusion of this

19  matter, after the evidence has been presented and counsels have

20  made their closing arguments I will tell you what the law is

21  and you must apply that law to the facts in order to reach a

22  fair and an impartial verdict.

23         Now although you may qualify to serve as a juror in

24  most cases there may be something that could disqualify you in

25  this case and make it embarrassing for you to serve.  In order

1   to learn this I will need -- I will have to ask you questions

2   and please understand that the questions I will ask are for a

3   legitimate purpose and not to simply pry into your personal

4   lives.  Do not hesitate to speak your mind honestly.  It is

5   very important that you answer each question fully and

6   truthfully.  Keep in mind that there are no right or wrong

7   answers; truthful and honest answers are necessary so that a

8   fair and an impartial jury can be selected.

9            Now, ladies and gentlemen, as we mature we all to

10  some extent develop certain biases and prejudices, fixed

11  opinions and views.  We develop these from our families, others

12  around us, from the media and from our everyday experiences.

13  Now you are entitled to be who you are and to feel and think

14  about things as you do.  It is important to recognize any

15  biases or prejudices, fixed opinions and views that you may

16  have and to disclose them to me during our jury selection.  If

17  for any reason my questions do not cover why you should not --

18  you would not be able to listen with an open mind to the

19  evidence in this case or be unable to reach a fair and an

20  impartial verdict it is necessary that you volunteer this

21  information to me when you are questioned.  If at any time

22  during the jury selection process you wish to discuss anything

23  with me concerning your ability to serve as a juror raise you

24  hand and I will speak with you outside the presence of other

25  jurors but in the presence of the attorneys.

1    After I have questioned each of you, you may be

2  excused as a juror by me if in my opinion there is a valid

3  reason why you should not serve.  Each attorney may also excuse

4  a limited number of jurors without giving any reason for doing

5  so.  Now in the event you are excused please do not consider

6  this as an insult or take it personally; it is merely part of

7  the process employed in selecting a jury as permitted by the

8  court rules.

9    Now I -- briefly I did explain to you the charges

10 involved in this case and the way we have estimated the length

11 of time to try this matter should be -- I believe it's we came

12 up with about nine or ten days.  I'll tell you where that takes

13 us.  We intend to start testimony this afternoon or at least

14 this morning or this afternoon, today, we should be finished

15 selecting a jury and we'll begin the -- the case.  We will have

16 court tomorrow which is Friday.  Normally I set aside Fridays

17 for other matters, but this Friday I have kept open for this

18 trial.  Monday of next week is a holiday, it's Veteran's Day

19 and it's a State holiday and the courts are closed, so we will

20 not have court on Monday. But we will on Tuesday, Wednesday and

21 Thursday of next week. There will be no court on Friday of next

22 week, there will be no case on Friday, I have other matters

23 scheduled.  Then we'll pick up again the following week;

24 Monday, Tuesday, Wednesday and Thursday, and that will bring us

25 into about the 21st of November.  We hope to be finished by

1  that time and that will be the Thursday before Thanksgiving,

2  it's the following week.  Now if we are not finished on that

3  Thursday then we will come back again on Monday, the first

4  couple of days into the Thanksgiving week, and that should be

5  the extent of it, we should not go further then that.  So

6  that's the extent of the trial.

7              We -- we start in the morning at 9:00 and we finish

8  each day at 4:00, so you can sort of plan around it in that --

9  in that vein.  The -- we usually sit for about an hour and then

10  take a break for about ten minutes.  We hear testimony for

11  about an hour and maybe it goes over that, give or take a few

12  minutes, but it's usually about an hour and then take a -- a

13  ten minute break and we're back again.  We break for lunch

14  between 12:30 and 1:30 and that would be the daily schedule.

15              The picking of the jury at this time is probably the

16  longest time you'll have to sit at one time without a break

17  until we get through this process.  So we should finish the

18  case by the Thursday before Thanksgiving, that's our aim, and

19  it looks like we can do that.  If for some reason something

20  happens where we're delayed we'll go into the Monday of --

21  Monday or Tuesday of the following week and then it should be

22  finished.  Again, next Mon -- next Monday there's no court and

23  next Friday there's no court, so --.

24              Now again, I had mentioned to you it's a criminal

25  case and there are certain principles of law that must be

1    accepted by jurors and I'll give you those in a minute.

2              First of all the indictment -- this indictment is not

3    evidence of any guilt.  I have it in my hand here, these are

4    the charges that have brought us all here today -- brought you

5    here, brought me here, brought everybody; the defendant, the

6    attorneys.  The guilt or innocence of the defendant will be

7    determined by you on what you hear in this courtroom, not on an

8    indictment.  And we don't live in a system where we say well,

9    you know, there's smoke, there must be fire.  No; the defendant

10   walks in this courtroom with a presumption of innocence.  The

11   indictment is not evidence, the defendant's -- of any -- of the

12   defendant's guilt, as I mentioned, it's a step in the procedure

13   to bring the matter before the court and a jury and a jury's

14   ultimate determination as to whether the defendant is guilty or

15   not guilty on a charge, that she comes in here, she's pled not

16   guilty to these charges and she's presumed to be innocent

17   unless each and every essential element of the offense charged,

18   each one if proven beyond a reasonable doubt the defendant must

19   be found not guilty of the charge.    Each charge will be

20   considered separately.

21             Now the burden of proving each element of the charge

22   beyond a reasonable doubt rests upon the State, that is the

23   Government.  And that burden never shifts to the defendant.  It

24   is not the obligation or the duty of a defendant in a criminal

25   case to prove, or in this case her innocence, or offer any

1  proof relating to her innocence.

2           Now a reasonable doubt is an honest and a reasonable

3  uncertainty as to the guilt of the defendant existing in your

4  minds after you have given full and impartial consideration to

5  all of the evidence.   Now it may arise from the evidence itself

6  or from the lack of evidence.

7           Now you will have to apply the law as I give it to

8  you regardless of your own personal feelings about it.

9           Now since this is a criminal case any verdict

10 returned by the jurors must by unanimous; that means simply

11 that all 12 jurors who may be selected to deliberate must agree

12 upon any verdict returned to the court.

13           I want to introduce you to the attorneys, I want to

14 introduce you to the defendant, and then I'm going to read a

15 list of names and these people -- the names that I will give

16 you are or I will read to you are potential or possible

17 witnesses in the case.   That doesn't mean that they will be

18 witnesses, but they possibly can be witnesses.   If you

19 recognize any of the names then just make a mental note and if

20 you're called upon to -- if you're selected as one of the

21 jurors then let us know how you recognize the name and what the

22 relationship is.

23           Now first I'm going introduce you to the Assistant

24 Prosecutor who represents the State of New Jersey in this

25 matter and who will be presiding or represent the State of New

1    Jersey during these proceedings, and that's Miss Patricia

2    Baglivi.

3              MS. BAGLIVI:  Good morning, ladies and gentlemen, my

4    name is Patricia Baglivi, I'm the Assistant Prosecutor here in

5    Bergen County.

6              THE COURT:  Thank you.  Now representing the

7    defendant, Ms. Farthing, is Mr. John Weichsel.  Mr. Weichsel,

8    will you please stand?

9              MR. WEICHSEL:  Good morning, ladies and gentlemen of

10   the jury, my name is John Weichsel, I'm an attorney, I practice

11   in Hackensack.  This is -- this is my client, Jamie Farthing, a

12   young woman from Conyers, Georgia.  Good morning; thank you.

13             THE COURT:  Thank you, counsel.  All right, I'm going

14   to give you the list of potential witnesses and you just

15   listen.  If you recognize a name just make a mental note of it

16   and if you're called upon then you can tell us.  There's a long

17   list here I have.  Again, they're not all going to be called

18   but it's something like 65 names I have to read to you, so pay

19   attention so you have an idea.

20             The first one is (all names phonetic) John Acunto of

21   Hohokus, New Jersey; Loopey Anderson of Union City, Georgia;

22   Luke Anderson of Union City, Georgia; Nate Bachino of Fairvail

23   -- Fairview, New Jersey; Tina Ball of Fort Lee, New Jersey; Ann

24   H. Hunter of Conyers, Georgia; Richard Stanford of Scotch

25   Plains, New Jersey; Elizabeth Yancey of Long Island City, New

1    York.  And the next two are two employees of Carteret --

2    Carteret Savings Bank -- has that bank changed?

3              MS. BAGLIVI:  Chase Manhattan.

4              THE COURT:  Yeah, I think Chase Manhattan took over

5    that bank, but it used to be Carteret Savings Bank in Oradell,

6    New Jersey, and that's Ruth Kehoe and Edith Makowski.  And from

7    the Valley Bank in Bergenfield, and that's another bank that's

8    been merged with Summit?

9              MS. BAGLIVI:  Summit.

10             THE COURT:  Yeah, I think it's now Summit, but it

11   used to be Valley Bank in Bergenfield; Carmella Lesterstock and

12   Leonard Minachino from that bank.  And then we'll continue with

13   Elsie Alexander of Albany, New York; Kathy -- Kathy Farthing of

14   Conyers, Georgia; Paul Farthing of Conyers, Georgia; Jason

15   Farthing of Conyers, Georgia; and Jessie Farthing of Conyers,

16   Georgia.  Karen Marie Hedley of New Ferry, New Jersey; Robert

17   Hippman of Hackensack, he's the alleged victim in the first

18   charge; Ayasuki Ishamoro of New York City; Ethan Mayann of

19   Englewood, New Jersey; Karen Ortega of Demerest, New Jersey;

20   Edward Kummer -- Cummer, C-U-M-M-E-R, of Conyers, Georgia;

21   Myonne Suh, and that Suh is spelled S-U-H, of Hempstead, New

22   York; Jane Hwa Suh, that's -- the middle name is H-W-A, and

23   then the last name is again Suh, S-U-H, from Hempstead, New

24   York; Thomas Delgado of the Bronx, New York; Vincent Lapino of

25   Edgewater, New Jersey; Leonard Marshall of Boca Raton, Florida;

1   William Mooney, Little Falls, New Jersey; Magda Molena Rahey,

2   R-A-H-E-Y, of Brooklyn, New York; Al Sem -- Sembogna of

3   Edgewater, New Jersey; Donald Sposa of Fort Lee, New Jersey;

4   Paul Bishoff of Eatontown, New Jersey; Elizabeth Deagas of

5   Edgewater, New Jersey; George Polites of Fort Lee, New Jersey;

6   Stella Polites of Fort Lee; Peter Polites of Fort Lee, New

7   Jersey; Michelle Jaris of New Rochelle, New York; Max

8   Calmanowitz of New York City; Mario Jacobino of Fort Lee; Dr.

9   Steven Shimmering from the Department of Psychiatry, the New

10  Jersey Medical School in Newark, New Jersey; William S.

11  Wukitch, that's Wukitch, W-U-K-I-T-C-H, from Bell Atlantic,

12  Nynex Mobil, that -- I guess it's located at Bedminster, New

13  Jersey; Steve Mallon of Chelsea Mini Storage, New York City.

14          I'm now going to continue with a list of names who

15  are involved in law enforcement, members of the Prosecutor's

16  Office, members of the various police departments and law

17  enforcement agencies.  From the Bergen County Prosecutor's

18  Office, Senior Investigator Terrance Alver; Sergeant Thomas

19  Goldrick; Senior Investigator Frank Kelaher; Lieutenant Roger

20  Cane; Senior Investigator Carlos Rodriguez; Senior Investigator

21  John Hardigan; Senior Investigator Vincent Markowski; Sergeant

22  Anthony D'Augostine; Investigator Joseph Harniak; Lieutenant

23  Michael Trahey.

24          And then from the Bergen County Narcotics Task Force

25  Investigator Salvatore Urato.

1              Rockdale County Sheriff's Department -- now Rockdale

2   is in Georgia.  And that's Investigator Michael Sellers from

3   Conyers, Georgia.

4              From the U.S. Marshal's Metro Fugitive Squad in

5   Atlanta, Georgia Investigator W.S. Robinson; Investigator

6   Orlando Whitehead; Investigator Bill Smith; Investigator Efrim

7   Davis.

8              And from the Hackensack Police Department Lieutenant

9   John Hines; Detective Sergeant Fred Puglisi; Detective Sergeant

10  Steven Mulger; Detective Sergeant Hugh Farley and Police

11  Officer Scott Sibel.

12             From the Bergen County Sheriff's Department,

13  Lieutenant Anthony Ravenda; Detective Chester Robinson;

14  Sheriff's Officer Henry Barca, B-A-R-C-A; Sheriff's Officer

15  John Kennedy; Detective Lieutenant John Murphy; Detective

16  Lieutenant Floyd Dempsey; Corrections Officer Brian Shaw.

17             From the Bergen County Police Department, Detective

18  Robert Delpalmer of Dapalmer.

19             From the Edgewater Police Department, Police Officer

20  Don Wright; Detective Sergeant Robert Bailey; Police Officer

21  Henry Webber; Police Officer Brian Gilmartin; Sergeant Dominick

22  V. Ray; Police Officer Edward Ring.

23             From the New York City Police Department, Detective

24  Frank Carruso.

25             For the F.B.I. Laboratory from Washington, D.C.,

The Court Addresses Prospective Jurors      17

1  George Scaluba; Detec -- I'm --

2         From the Drug Enforcement Agency Task Force,

3  Detective Lisa Barenzio; Detective Sal Palumbo.

4         Sufferen County Police Department, that's Sufferen

5  County Long Island, is that correct?  Detective William

6  Donahue; Detective McAlvin; Detective Sergeant Edward Fandrey;

7  Detective Robert J. Robinson.

8         And from the New York City Police Department Midtown

9  South Robbery Unit, Lieutenant Arthur Monahan; Sergeant Pat

10  McAndrew; Sergeant Al Regenhard; Sergeant Jim Martin; Detective

11  Val Throl; Detective Richard Bre -- Briecke, B-R-E --

12  B-R-I-E-C-K-E; Detective Joseph Dinn; Detective Michael Duggan;

13  and Detective Tommaso.

14         Forensic witnesses from the New Jersey State Police

15  Lab, Christopher H. Uber, Senior Forensic Scientist; Lowell R.

16  Mark, also a Senior Forensic Scientist; and Joyce A. Poliniak,

17  Senior Scientist -- Forensic Scientist; and Nancy -- I'm sorry,

18  Nancy Wilkins, a document examiner.

19         From the New Jersey State Police in Totowa, Detective

20  James R. Molinaro.

21         From the Bergen County Medical Examiner's Office, Dr.

22  Sunandan Singh.

23         From the Suffolk -- Suffolk County Medical Examiner's

24  Office, Dr. Gwynn Hollian.

25         New York City Ballistics Lab in New York City Police

1   Department, Police Officer Joseph Rimerez.

2           And the Sufforick County Division of Medical and

3   Legal Investigators and Forensic Scientists, Jeffrey Luber;

4   Robert Bowman; Linda Sherlock Risch; Thomas D. Zaveski; they're

5   all analysts.

6           Also, Billy Fineberg who is a social worker from

7   Nanuet, New York; Jonathan Kelman -- Dr. Jonathan Kelman, he's

8   a psychologist from Philadelphia, Pennsylvania; Arnoldo

9   Apolito, a medial doctor and psychiatrist from Montclair, New

10  Jersey.

11          Now that's the list.  As I mentioned, if you

12  recognized any names we'll -- you can tell us if your name is

13  called.

14          Now when your name is called I'm going to ask that

15  you come up and get seated in the jury box. And those of you

16  who are on my right side but your left side, figure out how

17  you're going to get up there.  I want you to walk around the

18  back of the jury box.  I need an officer -- my officer will be

19  there, Richie?  He'll stand right here and he'll show you where

20  to go and when you come in he'll put you in the box.  That

21  front row that's empty there is for your convenience.  You can

22  sort of cut through it.  I do not want you to come into the

23  well of the courtroom, I want you to come around the back and

24  around up here, okay?  So now don't figure out when your name

25  is called how am I going to get up there; figure it out now.

The Court Addresses Prospective Jurors     19

1   You know?  Don't stand up and say now how am I am going to get

2   there; just get up and walk -- it will become very easy to you

3   as you see when we proceed.

4            As I mentioned to you earlier, I have some jurors

5   from yesterday that are already placed in the box and I'm going

6   to have them come up now.  Bring them up, officer.

7                        (JURY SELECTION)

8                    *            *            *

20

<u>CERTIFICATION</u>

I, Dolores Hastings, the assigned transcriber, do hereby certify the foregoing transcript of proceedings in the Bergen County Superior Court, Law Division, Criminal Part, on November 7, 1996, on tape number 180-96, index number from 00:00:00 to 0:31:56, is prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings as recorded.

_____                    ____417____

Dolores Hastings                            AOC Number

KEMCO TRANS, INC.                           6/10/97

Agency Name                                 Date