EXHIBIT 32

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CRIMINAL PART
BERGEN COUNTY
DOCKET NO. 95-07-00889
A.D. #_____

STATE OF NEW JERSEY,                )
                                    )
              Plaintiff,            )
     vs.                            )           TRANSCRIPT OF
                                    )              TRIAL
JAMIE FARTHING,                     )
                                    )
              Defendant.            )

                         Place: Bergen County Courthouse
                                Hackensack, NJ 07601

                         Date:  November 26, 1996

BEFORE:

     HONORABLE TIMOTHY J. SULLIVAN, J.S.C. AND JURY

TRANSCRIPT ORDERED BY:

     DEBORAH COLLINS, ESQ. (Office of the Public Defender)

APPEARANCES:

     PATRICIA BAGLIVI, ESQ. (Assistant Prosecutor)
     Attorney for the State of New Jersey

     JOHN WEICHSEL, ESQ.
     Attorney for the Defendant

                         Transcriber Dolores Hastings
                         KEMCO TRANS, INC.
                         P.O. Box 900
                         Clark, New Jersey 07066
                         (908) 382-8500

                         Video Recorded
                         Recording Operator, L. Ostapeck

1

# I N D E X

2 **The Verdict**                                                   49

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  All right, for the record there is a

2    couple of questions that the jury has presented.

3          First is -- question number one, they ask the

4    difference between kidnapping and criminal restraint.  "What

5    elements must prosecution prove?"  I assume that's for both of

6    them.  I'll re-read that portion.

7          And then they ask for the difference between murder

8    and aggravated manslaughter, "What elements must the

9    prosecution prove?"

10         Question number three, "What evidence was presented

11   that showed a gun was present at the Polites house?" And then

12   they asked for a break before we answer the questions which I

13   gave them.

14         Any -- any comments, counsels?

15         MS. BAGLIVI:  Judge, I know we had discussed in

16   chambers the -- the -- the issue of the gun and I had indicated

17   that it was in the stenographic statement that Lieutenant Kane

18   gave.  It is also in the oral statement that Senior

19   Investigator Terrance Alver testified to, the fact that there

20   were guns at the Polites home that night.

21         THE COURT:  Any objection to explaining the

22   difference between murder -- I'm going to read the murder

23   definition from the statute and aggravated definition from the

24   statute and then read the charges again on those two issues.

25         MR. WEICHSEL:  No, judge.

Colloquy                                                         4

1          MS. BAGLIVI:  No objection, Your Honor.

2          THE COURT:  And they're not asking for reckless

3   manslaughter, but I might have to go into that too I think.

4          MR. WEICHSEL:  Yeah, I would think if you're going to

5   --

6          THE COURT:  If we're going to give those two although

7   they aren't asking for it.

8          MS. BAGLIVI:  They -- they -- they say murder and

9   aggravated manslaughter though, and it's on their verdict sheet

10  three different ways, so they would have known the name of the

11  third one if they wanted it.

12         MR. WEICHSEL:  Well I --

13         THE COURT:  I know.  You're objecting and you're

14  saying go ahead and I'm going to decide, that's why I'm here.

15  All right.  And the kidnapping and the restraint I'll do the

16  same.

17             Now with regard to the third question, "What evidence

18  was presented that showed a -- a gun was presented at the

19  Polities house?"  Do you have any comments, Mr. Weichsel, on

20  that?

21         MR. WEICHSEL:  Judge, I -- I think what you can tell

22  the jury is that they must rely on their own recollection, they

23  are the triers of the facts and you can advise the jury that if

24  they want certain -- any testimony read back that is available

25  to them, without pointing out any testimony.

1          THE COURT:  Well the only -- the only testimony in

2    the case was -- as to what happened in the Polites house -- see

3    it's different from the Hippman robbery because Mr. Hippman

4    came in and testified and they had some direct evidence from

5    him as to what occurred in the apartment.  The only evidence

6    that we have, that has been presented as to what happened at

7    the Polites house is from the statement of the defendant.  So

8    if whatever evidence there is as to whether there's a gun or

9    not, it's either in that statement or it's not.

10          MR. WEICHSEL:  Yeah, I'm wondering if just --

11          THE COURT:  So I'm inclined to open the door to the

12   jury and let them know.  And in fact, on their verdict -- on

13   their question sheet here they have what they need crossed out

14   because maybe someone had come to the conclusion, which I did

15   instruct them, that there -- there was a statement made by the

16   defendant which will not be available to them in the jury room.

17   Now that may have been misleading, the written statement is not

18   available.  And the reason for that is obvious for two reasons;

19   first of all it's -- it's cumulative, it's been read on the

20   record.  Secondly, there are portions of that particular

21   statement which refer to another crime but we had to delete --

22          MS. BAGLIVI:  Other crimes.

23          THE COURT:  -- and make sure the jury -- in fact when

24   Officer Kane or Lieutenant Kane read it in the -- in the trial

25   itself to the jury we had already excised it from -- those

1   portions.  So those are the reasons really that they don't have

2   the statement available to them however, I -- I do feel

3   compelled to let them know that that statement is available to

4   be read back to them from the -- from the record, if they want

5   it -- if they want it.

6            MS. BAGLIVI:  Judge, I would also ask that you tell

7   them -- I mean unless Mr. Weichsel is disputing the fact that

8   it's in the statement or that it was in the oral statement, I

9   don't think there's anything wrong with telling them that it

10  was in both statements and if they want them read back that's

11  up to them.

12           THE COURT:  No, I'm not telling them what was in both

13  statements because then I'm telling·them what the evidence is

14  and I'm not going to do that.  That's their -- that's their --

15  that's their purview, I mean that's their world that they have

16  to dig it out.  But what I do know is that whatever happened in

17  that particular apartment that we know of comes from this

18  defendant in that statement that she made.  And there -- if we

19  go back to the oral statement which was testified to by Alver -

20  -

21           MR. WEICHSEL:  Detective Alver.

22           THE COURT:  Alver.  There's a lot of other exten --

23  extenuating circumstances he talked about too which I think

24  would be too -- too cumbersome to try to edit out.  But the

25  statement itself, and we just reviewed it downstairs of the

```
 1    tape, is that that statement, the first portion of that
 2    statement has to do with the Hippman robbery. Then the jury
 3    took a break and I called for a break at that time.
 4              MS. BAGLIVI:  Right.
 5              THE COURT:  And when we came back then the statement
 6    continued with regard to the Polites incident --
 7              MR. WEICHSEL:  Judge --
 8              THE COURT:  -- and that's where -- that's where I --
 9    I intend to -- if they want it read back that's where I would
10    start it from, so it's about 30 pages.
11              MR. WEICHSEL:  Yeah, I'm wondering if the import of
12    that question is, is there any other evidence other than her
13    statement that there were guns present?
14              MS. BAGLIVI:  It doesn't --
15              THE COURT:  Well --
16              MS. BAGLIVI:  It doesn't say that.
17              MR. WEICHSEL:  I understand.
18              THE COURT:  We have people there and the question is
19    clearly, "What evidence was presented that showed a gun was
20    present at Polites' house?"  And I cannot tell them what
21    evidence was presented.
22              MR. WEICHSEL:  No, that's fine.
23              THE COURT:  I can tell them this is the evidence of
24    what happened at Polites' house and we get it only from -- in
25    this case, only from the statement of the defendant.  Nobody
```

1   else was -- testified as to who was there that night.  In fact

2   the body was discovered days later, so.

3               All right, bring the jury up please.

4                   (PAUSE - THE JURY ENTERS THE COURTROOM)

5               THE COURT:  We have alternates too, are they?  Yeah.

6                           (PAUSE)

7               THE COURT:  Good morning, ladies and gentlemen.

8               THE JURORS:  Good morning, judge.

9               THE COURT:  Good morning.  I didn't see the

10  alternates.  I knew you were here, I saw you at a distance and

11  -- but I did see the jury this morning and in fact I also am

12  going to instruct the attorneys that I did make inquiry of the

13  jurors when they arrived this morning before they started, had

14  they read anything in the newspapers pertaining to this case

15  and the response was negative, they had not. They are aware

16  that there was an article in today's paper however, they did

17  not read it.

18              I have a couple of questions that the jury has

19  presented.  I'll read them to you so if there is any difference

20  in your mind as to what these questions are or what you

21  presented just wave your hand, don't yell out, just wave your

22  hand.

23              The first question is the different between

24  kidnapping and criminal restraint.  "What elements must

25  prosecution prove?"

1          The question is the difference between murder and

2    aggravated manslaughter, "What elements must the prosecution

3    prove?".

4          And the third question is, "What evidence was

5    presented that show a gun was present at the Polites house?"

6          Those are the three questions, correct?

7          Now I can read to you and I'll explain basically the

8    difference between the crimes which you suggest.  With regard

9    to the last question, "What evidence was presented that showed

10   a gun was present at Polites' house?"  Now I have to instruct

11   you that you have to rely upon your own recollection as to what

12   the testimony was and what the evidence was, okay?  It's not --

13   it's not appropriate for -- and I do appre -- I want to -- if I

14   ever make reference to any evidence it's your recollection that

15   counts and not mine.

16         There is a section here in this question -- I don't

17   know if you all -- this is written by the foreperson I assume?

18         THE JURY FOREPERSON:  Yes.

19         THE COURT:  And it's crossed out.  It says, "Jamie

20   Farthing's steno statement regarding Polites' crime from the

21   time they got into..." and then it stops, and then it's crossed

22   out.  Well I did instruct you that that particular written

23   statement that we referred to during the trial was not marked

24   into evidence.

25         A JUROR:  (Inaudible).

 1          THE COURT:  No questions; no, we don't have a

 2  colloquy here.  Colloquies are like this; you make a -- you ask

 3  a question, I discuss it with the attorneys, then I give you my

 4  answers, all right?

 5          Now, and that's -- I assume that that's the reason

 6  that it's crossed out, because someone probably amongst you

 7  realized that the steno statement was not available to you.

 8  However, with that in mind, I also must inform  you that the

 9  statement that was made was read to you from the witness box.

10  That testimony is available to you.  We can read it -- we can

11  run it back for you if you want, but you have to let me know if

12  you want that, okay?  So that particular portion of the -- of

13  the statement which was read by Lieutenant Kane I believe it

14  was, that would be available to you if you want to hear that,

15  okay?  But you let me know; you decide that when you go back

16  and let me know.

17          First I'll answer the first two questions.  The

18  kidnapping and criminal restraint, you asked for the

19  difference, all right?  What I'm going to do is I'm going to

20  read to you the statute of what kidnapping is, all right?  And

21  then I'll also read to you what the law says about criminal

22  restraint.  In fact I'll even give you the exact statute.  It's

23  2C:13-2A is the statute of criminal restraint.  I'll read you

24  the definition of the kidnapping statute that's pertinent to

25  this case.  Let me just -- all right.

1           "A person is guilty of kidnapping if he unlawfully

2    confines another for a substantial period with any of the

3    following purposes."  Or for any of the following purposes, all

4    right?  He's guilty of kidnapping if he unlawfully confines

5    another for a substantial period for any one of these two

6    following purposes.  "One, in order to facilitate the

7    commission of any crime or flight thereafter, or to inflict

8    bodily injury on or to terrorize the victim or another."

9    That's kidnapping, all right?

10          Now criminal restraint, "A person commits the crime

11   of criminal restraint if he restrains another unlawfully in

12   circumstances exposing the other to a risk of serious injury or

13   holds another in a condition of involuntary servitude."   And

14   that's criminal restraint.  Criminal restraint is that he

15   commits the crime -- that crime if he restrains another

16   unlawfully in circumstances exposing the other to serious -- to

17   a risk of serious bodily injury or -- or he holds another in a

18   condition of involuntary servitude.

19          All right, now I'll give you the -- what has to be

20   proved.  Now with regard to the kidnapping, as I said a person

21   is guilty of kidnapping if he unlawfully confines another for a

22   substantial period with -- with the following purpose -- any of

23   the following purposes.  One, to facilitate the commission of

24   any crime or flight after the crime or -- or to inflict bodily

25   injury on or to terrorize the victim or another.  In order to -

1   - for you to find the defendant guilty of kidnapping the State

2   is required to prove each of the following elements to you

3   beyond a reasonable doubt.  One, that the defendant, Jamie

4   Farthing, unlawfully confined Jamie Polites and/or Robert

5   Hippman -- Hippman.  This applies to both of those counts,

6   that's one and eight, charges.  That he -- that she confined --

7   unlawfully confined them for a substantial period; two, that

8   the confinement was with the purpose to facilitate the

9   commission of any crime or flight thereafter; or to inflict

10  bodily injury or to terrorize the victim.  If confinement was

11  for the purpose to terrorize the victim, either one of those

12  two are number two.

13          In relation to the first you will note that I have

14  used the term "unlawfully confined."  A confinement is unlawful

15  if it is accomplished by force, threat or deception.  Unlawful

16  confinement must be for a substantial period however, for this

17  purpose a substantial period is not measured in seconds,

18  minutes or hours nor by any other standard based strictly on

19  the passage of time.  Rather, a substantial period is one that

20  is significant in that it is more than incidental to the

21  underlying crime and substantially increases the risk of harm

22  to the victim.  That increased risk of harm must not be

23  trivial.  If the victim is confined by only a slight period --

24  for only a slight period of time and such confinement does not

25  create the isolation and increased risk of harm that are at the

Colloquy                                                                13

1   heart of the kidnapping statute then you should not convict the

2   defendant of kidnapping -- of the kidnapping charge. Therefore,

3   in determining whether the confinement was substantial you must

4   consider one, the duration of the confinement; two, whether the

5   confinement occurred during the commission of a separate

6   offense; three, whether the confinement which occurred is

7   inherent in the separate defense, and whether the confinement

8   created a significant danger to the victim independent of that

9   posed by the separate offense.

10          The second element the State is required to prove is

11  that the confinement was with the purpose to facilitate the

12  commission of any crime or flight thereafter.  I have told you

13  that to constitute kidnapping, an unlawful -- an unlawful

14  removal or confinement must have been with a specific purpose.

15  Therefore, I must define purpose for you.  Again, a person acts

16  purposely with respect to the nature of her conduct or the

17  result thereof if it is her conscience object to engage in

18  conduct of that nature to cause such a result, that is if the

19  person means to do what she does or to cause such a result.  A

20  person acts purposely with respect to the attendant

21  circumstances if the person is aware of the existence of such

22  circumstances or believes or hopes that they exist.  With

23  purpose, design or -- or with design or equivalent terms have

24  the same meaning.

25          Now the nature of the purpose with which the

1   defendant acted toward the victim is a question of fact for the

2   jury to decide.   Again, purpose is a condition of the mind

3   which cannot be seen and can only be determine by reference or

4   by inference drawn from the defendant's conduct from words or

5   acts as they have been presented in this -- in the evidence.

6   Now you have heard and seen in this case -- as you have heard

7   and seen in this case, it is not necessary that the State

8   produce a witness or witnesses to testify that the defendant

9   stated for example that her purpose in confining Jamie Polites

10   and/or Robert Hippman was to facilitate the commission of any

11   crime or flight thereafter.   That is, in to aid or in

12   committing a crime or fleeing afterwards.   It is within the

13   power of the jury to find that the proof of purpose has been

14   furnished beyond a reasonable doubt by inferences which you may

15   draw from the nature of the acts and the circumstances

16   surrounding the conduct under investigation as they have been

17   presented in the evidence you have heard and seen in this case.

18         And then I -- I mention to you a section of our

19   statute provides that kidnapping is a crime of the first degree

20   except that it is a crime of the second degree if the kidnapper

21   releases the victim unharmed and in a place -- and in a safe

22   place prior to apprehension.

23         Now in this case the State alleges that the defendant

24   did not release the victim -- victims, either one of them --

25   unharmed and in a place safe prior to her apprehension.   The

1   burden of proof is on the State to prove beyond a reasonable

2   doubt that the victim was either harmed or -- either harmed or

3   not released in a safe place prior to defendant's apprehension.

4   Unless you find that the State has carried this burden you must

5   find the defendant not guilty of kidnapping in the first

6   degree.   Therefore, if you find that the State has not proven

7   to you beyond a reasonable doubt each and every element of the

8   crime of kidnapping as I have defined that crime to you then

9   you must find the defendant not guilty.   If you find the

10  defendant has -- I'm sorry -- if you find that the State has

11  proven to you beyond a reasonable doubt that the defendant

12  committed the crime of kidnapping as I have defined that crime

13  to you but the State has not convinced you beyond a reasonable

14  doubt that the victim was either harmed or not released in a

15  safe place prior to the defendant's apprehension then you must

16  find the defendant guilty of kidnapping in the second degree.

17          Now if you find beyond a reasonable doubt that the

18  defendant committed the crime of kidnapping and that she harmed

19  the victim or did not release the victim in a safe place prior

20  to the defendant's apprehension then you must find the

21  defendant guilty of kidnapping in the first degree.   And as I

22  said, those particular questions are taken care of in the

23  verdict sheet by answering the yes or no questions if you find

24  him guilty of kidnapping.

25          Now if you find the defendant not guilty of

1   kidnapping at all, in any way, then you must consider the crime

2   of criminal restraint, that's the less included charge in the

3   kidnapping -- in the kidnapping -- in kidnapping, is the

4   criminal restraint.

5           The statute reads that "A person is guilty of

6   criminal restraint if he knowingly restrains another person

7   unlawfully in circumstances exposing the other person to risk

8   of serious bodily injury."

9           Now in order for you to find the defendant, Jamie

10  Farthing, guilty of this offense the State has to prove the

11  essential elements of this offense to you beyond a reasonable

12  doubt. And these elements are first -- first of all, that the

13  defendant, Jamie Farthing, knowingly restrained Jamie Polites

14  and/or Robert Hippman; and two, that the restraint was known by

15  the defendant to be unlawful; and three, the restraint was

16  under such circumstances which exposed Jamie Polites and/or

17  Robert Hippman to serious bodily injury.

18          Now, I've used the term restraint -- or the terms

19  restraint, knowingly, lawfully and serious bodily injury.  The

20  word restraint means confinement or limitation or abridgement.

21  Restraint involves hinderance, confinement or restriction of

22  liberty.  If a person acts knowingly with respect to the nature

23  of his conduct or the attendant circumstances, if he is aware

24  that his conduct is of that nature or that such circumstances

25  exist or is aware of the high probability of their existence, a

1   person acts purposely then.

2           A person acts knowingly with respect to the result of

3   his conduct if he is aware that it is practically certain that

4   his conduct would cause such a result; knowing with knowledge

5   or -- or equivalent terms that have the same meaning.

6           Now I have used the terms unlawful.  Unlawful means

7   to accomplish the restraint by force, threat or deception.

8           The term serious bodily injuries mean bodily injuries

9   which create a substantial risk of death or which causes

10  serious permanent disfigurement or protractive loss or

11  impairment of the functions of any bodily member or organ.

12          Now if after a consideration of all of the evidence

13  you are convinced beyond a reasonable doubt that the defendant

14  did knowingly, unlawfully restrain Jamie Polites and/or Robert

15  Hippman, and that such restraint exposed Jamie Polites and/or

16  Robert Hippman to the risk of serious bodily injury then your

17  verdict should be guilty.  If however, after considering all

18  the evidence you find that the State has failed to prove each

19  and every element of the offense charged beyond a reasonable

20  doubt then your verdict must be not guilty.

21          And again, you are considering criminal restraint if

22  you find him not -- if you find the defendant not guilty of

23  kidnapping, then you consider criminal restraint, all right?

24          All right, now murder and aggravated manslaughter.

25  I'll give you the definitions of each of those and then we'll

1   go back into what the State has to prove.

2          All right, here's the definitions.  I'm going to give

3   you the definitions of murder, of aggravated manslaughter and

4   also reckless manslaughter, all three of the murder and lesser

5   included offenses of aggravated manslaughter and reckless

6   manslaughter.

7          Murder is defined in the statue as, "A person is

8   guilty of murder if he or she purposely causes the death or

9   serious bodily injury resulting in death or knowingly causes

10  death or serious bodily injury resulting in death."  So it's

11  the person is guilty of murder if he purposely or knowingly,

12  either one, purposely or knowingly causes death or serious

13  bodily injury resulting in death; that's the definition.

14         The definition of aggravated manslaughter -- "A

15  person is guilty of aggravated manslaughter if he or she

16  recklessly causes the death of another under circumstances

17  manifesting extreme indifference to human life."

18         Reckless manslaughter -- "A person is guilty of

19  reckless manslaughter if he or she recklessly causes the death

20  of another person."

21         There's three different definitions.  For murder,

22  when a person would be found guilty of purposely or knowingly

23  causing the death or serious bodily injury resulting in death

24  the State has to prove beyond a reasonable doubt, and in this

25  case we're talking about James Polites, they'd have to prove

1  beyond a reasonable doubt one, that the defendant caused James

2  Polites' death or serious bodily injury resulting in Mr.

3  Polites' death; number two, that the defendant did so purposely

4  or knowingly.

5          Now a person who causes another's death does to

6  purposely when it is that person's conscious object to cause

7  death or serious bodily injury resulting in death.  A person

8  who causes another's death does so knowingly when the person is

9  aware that it is practically certain that his or her conduct

10 will cause death or serious bodily injury resulting in death.

11         The nature of the purpose of knowledge -- the nature

12 of the purpose or knowledge with which the defendant acted

13 toward James Polites is a question of fact for you, the jury,

14 to decide.  Again, purpose and knowledge are conditions of the

15 mind which cannot be seen and can only be determined by

16 inferences from conduct, words and acts.  It's not necessary

17 for the State to produce a witness or witness who could testify

18 that the defendant stated for example, that he or she or her

19 purpose or his purpose was to cause death or serious bodily

20 injury resulting in death, or that he or she knew that his or

21 her conduct would cause death or serious bodily injury

22 resulting in death.  It is within your power to find that proof

23 of purpose or knowledge that was furnished -- that was

24 furnished beyond a reasonable doubt by inferences which may

25 arise from the nature of the acts and surrounding

1   circumstances.  Such things as the place where the acts

2   occurred, the weapon used, the location, the number and nature

3   of wounds inflicted, and all that was done or said by the

4   defendant proceeding, connected with and immediately succeeding

5   the events leading to the death of James Polites are among the

6   circumstances to be considered.

7          Although the State must prove that the defendant

8   acted either purposely or knowingly the State is not required

9   to prove a motive.  If the State has proved the essential

10  elements of the offense beyond a reasonable doubt the -- the

11  defendant must be found guilty of that defense regardless of

12  the defendant's motive or lack of motive.  Now if the State

13  however, has proved a motive you may consider it insofar as it

14  gives meaning to other circumstances.  And on the other hand,

15  you may consider the absence of motive in weighing whether or

16  not the defendant is guilty of the crime charged.

17         Now the other element that the State must prove

18  beyond a reasonable doubt is that the defendant caused James

19  Polites' death or caused serious bodily injury resulting in his

20  death.  Again, I gave you the definition; serious bodily injury

21  mean bodily injury which creates a substantial risk of death or

22  which causes serious permanent disfigurement or protracted loss

23  or impairment of the function of any bodily member or organ.

24         When the killing is committed purposely or knowingly

25  causing death or serious bodily injury resulting in death it

1    must be within the design or the contemplation of the

2    defendant.   Whether the killing is committed purposely or

3    knowingly causing death or serious bodily injury resulting in

4    death must be within the design of contemplation of the

5    defendant.

6            So if you determine that the State has proven beyond

7    a reasonable doubt that the defendant purposely or knowingly

8    caused death or serious bodily injury resulting in death you

9    must find the defendant guilty of murder.   On the other hand,

10   if you determine that the State has not proven beyond a

11   reasonable doubt that the defendant purposely or knowingly

12   caused the death or serious bodily injury resulting in death

13   then you must find her not guilty of murder and go on to

14   consider whether the defendant should be convicted of the

15   crimes of aggravated or reckless manslaughter.   And as I said

16   to you, a person is guilty of aggravated manslaughter if she

17   recklessly causes the death of another or under circumstances

18   manifesting extreme indifference to human life.

19           In order for you to find the defendant guilty of

20   aggravated manslaughter the State is required to prove each of

21   the following elements beyond a reasonable doubt; one, that the

22   defendant caused James Polites' death; and two, that the

23   defendant did so recklessly; and three, that the defendant did

24   so under circumstances manifesting extreme indifference to

25   human life.

1    Now one element the State must prove beyond a

2   reasonable doubt is that the defendant acted recklessly.  A

3   person who causes another's death does so recklessly when he or

4   she is aware of and consciously disregards a substantial and

5   unjustifiable risk that death will result from his or her

6   conduct.  The risk must be of such a nature and degree that

7   considering the nature and the purpose of the defendant's

8   conduct and the circumstances known to the defendant, his or

9   her disregard of that risk if a gross deviation from the

10   standard of conduct that a reasonable person would follow in

11   the same situation.  In other words, you must find that the

12   defendant was aware of an consciously disregarded the risk of

13   causing death.  And if you find that the defendant was aware of

14   and disregarded the risk of causing death you must determine

15   whether the risk that she disregarded was substantial and

16   unjustifiable.  In doing so you must consider the nature and

17   the purpose of the defendant's conduct and the circumstances

18   known to the defendant.  And you must determine whether in

19   light of those circum -- of those factors the defendant's

20   disregard of that risk was a -- a gross deviation from the

21   conduct of -- a reasonable person would have observed in the

22   defendant's situation.

23        Now another element that the State must prove beyond

24   a reasonable doubt is that the defendant acted under

25   circumstances manifesting extreme indifference to human life.

1  The phrase "under circumstances manifesting extreme

2  indifference to human life" does not focus on a defendant's

3  state of mind, but rather on the circumstances under which you

4  find she acted.  If in light of all the evidence you find that

5  the defendant's conduct resulted in a probability as opposed to

6  a mere possibility of death then you may find that she acted

7  under circumstances manifesting extreme indifference to -- to

8  human life.  On the other hand if you find that her conduct

9  resulted in only a possibility of death then you must acquit

10 her of aggravated manslaughter and consider the offense of

11 reckless manslaughter, which I will explain to you in a moment,

12 shortly.

13       The final element in aggravated manslaughter that the

14 State must prove beyond a reasonable doubt is that the

15 defendant caused Jamie Polites' death.  Now you must find that

16 Jamie Polites would not have died but for the defendant's

17 conduct.

18       If after consideration of all of the evidence you are

19 convinced beyond a reasonable doubt that the defendant

20 recklessly caused Jamie Polites' death under circumstances

21 manifesting extreme indifference to human life then your

22 verdict should be guilty of aggravated manslaughter.  If

23 however, your -- after consideration of all the evidence you

24 are not convinced beyond a reasonable doubt that the defendant

25 recklessly caused Mr. Polites' death under circumstances

1   manifesting extreme indifference to human life you must find

2   the defendant not guilty of aggravated manslaughter and go on

3   and consider whether the defendant should be convicted of

4   reckless manslaughter.

5          The definition of reckless manslaughter is, "A person

6   is guilty of reckless manslaughter if he or she recklessly

7   causes the death of another person." The State must prove

8   beyond a reasonable doubt the following elements.  There are

9   two; must prove that the defendant caused Jamie Polites' death,

10  and two, that the defendant did so recklessly.  The State must

11  prove beyond a reasonable doubt that the defendant acted

12  recklessly.

13         Now I already gave you the definition of reckless,

14  I'll give it to you again.  "A person who causes another's

15  death does so recklessly when he or she is aware of and

16  consciously disregards a substantial and justifiable risk that

17  death will result from her conduct. The risk must be of such a

18  nature and degree that considering the nature and purpose of

19  the defendant's conduct and the circumstances known to the

20  defendant her disregard of that risk is a gross deviation from

21  the standard of conduct that a reasonable person would follow

22  in the same situation."  In other words, you must find that the

23  defendant was aware of and consciously disregarded the risk of

24  causing death.  If you find that the defendant was aware of and

25  disregarded the risk of causing death you must determine

1  whether that risk that she disregarded was substantial and

2  unjustifiable.  In doing so you must consider the nature and

3  purpose of the defendant's conduct and the circumstances known

4  to the defendant.  And you must determine whether in light of

5  those factors the defendant's disregard of that risk was a

6  gross deviation from the conduct a reasonable person would have

7  observed in the defendant's situation.

8          The other element that the State must prove beyond a

9  reasonable doubt for reckless manslaughter is that the

10  defendant caused Mr. Polites' death.  You must find that Mr.

11  Jamie Polites would not have died but for the defendant's

12  conduct.  If after the consideration of all of the evidence you

13  are convinced beyond a reasonable doubt that the defendant

14  recklessly caused Mr. Polites' death then your verdict should

15  be guilty of reckless manslaughter and however, after

16  consideration if all the evidence -- of all the evidence you

17  are not convinced beyond a reasonable doubt that the defendant

18  reck -- recklessly caused Mr. Polites' death you must find the

19  defendant not guilty of reckless manslaughter.

20          All right, that's the law on the questions that you

21  asked, ladies and gentlemen of the jury.  With regard to that

22  last question, as I said, you are to rely upon your own

23  recollection of the testimony.  If you would like a read back

24  of that portion of the testimony of Lieutenant Kane wherein he

25  sets forth the -- the statement given by the defendant that

1  would be available to you.  You go back to the jury room, you

2  decide that; just send a note out and let me know if you want

3  it and we'll have it ready for you.

4          MS. BAGLIVI:  Judge, before --

5          MR. WEICHSEL:  Judge, one second.

6          MS. BAGLIVI:  Can approach?

7          THE COURT:  All right, just one second.

8                  (SIDEBAR)

9          THE COURT:  I'm sorry.

10         MR. WEICHSEL:  That's all right.

11         MS. BAGLIVI:  Judge, I'm sorry, this is my fault, I

12  should have told you I should request -- I would request that

13  you charge accomplice liability because murder and -- and

14  aggravated manslaughter and manslaughter all talk about

15  defendant causing and the theory of the State's case has always

16  been accomplice liability especially in light of the <u>Cook</u> case

17  because that was the exact same situation there.  I would ask

18  that you just remind them about accomplice liability and give

19  them a charge on that.  It goes hand and hand with the --

20         THE COURT:  Why don't -- the whole charge --

21         MR. WEICHSEL:  Well I think -- I think what I was

22  going to ask the court to do is just to (inaudible) the jurors

23  that the charge that you gave them today has to be given in the

24  context of your entire charge.

25         THE COURT:  Yeah, I think I'm going to make reference

1   to that.  I don't --

2             MS. BAGLIVI:  But then what about just telling them

3   don't forget that the State's theory is accomplice --

4             THE COURT:  Yeah.

5             MS. BAGLIVI:  Okay.

6             MR. WEICHSEL:  Judge --

7             THE COURT:  And in the meantime (inaudible)

8   accomplice liability.

9             MS. BAGLIVI:  Right.

10            MR. WEICHSEL:  I'm just -- the entire, you know,

11  burden of proof -- you know -- okay.

12                         (END OF SIDEBAR)

13            THE COURT:  Now, ladies and gentlemen, I have to

14  remind you also that the -- what I've just read to you as part

15  of the charges has to be taken in the context of the entire

16  charge that I gave you -- that I gave you yesterday.  And I

17  also remind you of the State's theory of accomplice liability

18  and -- which is the underlying charge to -- to every one of the

19  charges that has been presented by the State, they have a

20  theory of accomplice liability permeating through that as I

21  read to you yesterday.  And if there's any question in your

22  mind about the accomplice liability issue just let me know that

23  too and I'll -- I'll review that for you, all right?  And

24  remember again, the whole context of my -- of my charge, the

25  presumption of innocence, the burden of proof is on the State

 1 | and everything, the guilt or -- must be found beyond a

 2 | reasonable doubt if she's found guilty.

 3 |        All right, let me know if you want that read back,

 4 | that portion of the testimony, all right?  Go ahead back down.

 5 |        (PAUSE - THE JURY LEAVES THE COURTROOM)

 6 |        MS. BAGLIVI:  Should we stay around for a few minutes

 7 | to see?

 8 |        THE COURT:  Yeah, let's see if they ask. They're

 9 | either going to tell us right away or not.

10 |        MS. BAGLIVI:  Okay.

11 |        MR. WEICHSEL:  Judge, I've got a client waiting at

12 | the office.  I'd like -- if they're not going to ask the

13 | question I'd like to run back.

14 |        THE COURT:  I know you would.

15 |        (OFF THE RECORD/ON THE RECORD)

16 |        THE COURT:  All right, bring the jury up please?

17 |        (PAUSE - THE JURY ENTERS THE COURTROOM)

18 |        THE COURT:  All right, ladies and gentlemen, I have

19 | another question.  You're asking for accomplice liability, it

20 | needs to be explained again.  You said, "Can we break now?"

21 | The answer is no.  Testimony -- you're asking for testimony,

22 | "Need to review Lieutenant Kane's testimony surrounding the

23 | Polites crimes and the steno statement of Jamie Farthing."  Now

24 | I have that ready but I'm not going to run it now, I'm going to

25 | run it after we break.  I'll give you a break after the -- I'm

1  going to give you accomplice liability now and then break and

2  then after lunch, which isn't here yet.  You see, that's the

3  break, is lunch, it's not going out.

4        The number two question is you need to review the

5  entire testimony of Eddie Kummer, the boyfriend, including the

6  cross and redirect and we're having that prepared now too.  But

7  I'll give you accomplice liability now and the alternates are

8  going to be coming in so I'll --.

9        MR. WEICHSEL:  Judge, you're going to have to repeat

10  this for the alternates?

11        THE COURT:  No.  They're here for my instructions.

12        MR. WEICHSEL:  Okay.

13        THE COURT:  All right, there's a request for the

14  accomplice liability charge.  Now accomplice liability, when a

15  defendant is charged as an accomplice -- let me make sure I

16  have the pages correct -- and it the jury is instructed as to

17  lesser included charges -- that's why we have to address this.

18  The State alleges here that the defendant is legally

19  responsible for the criminal action of Ivy Demolena and Thomas

20  Christopher James in violation of the law which reads in

21  pertinent part as follows.

22        "A person is guilty of an offense if it is committed

23  by his own action or the conduct of another person for which he

24  is legally accountable or both.  A person is legally

25  accountable for the conduct of another person when..." -- I'm

1  going to use the feminine, she, because the defendant is female

2  -- "A person is legally accountable for the conduct of another

3  person when she is an accomplice of such other person or

4  persons in the commission of a -- of an offense.   A person is

5  an accomplice of another person in the commission of an offense

6  if with the purpose of promoting or facilitating the commission

7  of the offense she aids or agrees or attempts to aid such other

8  person or persons in planning or committing it."

9           Now this provision of the law means that only -- that

10 not only is the person who actually committed the criminal act

11 responsible for it, but one who is legally accountable as an

12 accomplice is also responsible.  Now this responsibility as an

13 accomplice may be equal and the same as he or she who actually

14 committed the crime or there may be responsibility in a

15 different degree depending on the circumstances as to what --

16 as to -- as you may find them to be, these circumstances.  I'll

17 further explain that distinction in a moment.

18          Now in this case the State alleges that the defendant

19 is equally -- equally guilty of the crimes committed by Ivy

20 Demolena and Thomas Christopher James because she acted as his

21 or her or their accomplice with the purpose that the specific

22 crimes charged by committed.  In order to find the defendant

23 guilty of the specific crime charged the State must prove

24 beyond a reasonable doubt each -- reasonable doubt each of the

25 following elements.  First that Ivy Demolena and/or Thomas

1   Christopher committed the crimes of -- and then there's the

2   different crimes -- kidnapping of Mr. Hippman and -- and Mr.

3   James Polites, armed robbery of Hippman and Polites, and the

4   murder of Polites, and also the possession of the firearms for

5   unlawful purposes and that they had these fire -- handguns

6   without a permit.  So the State's contention is the Demolena

7   and Christopher James committed these crimes and they have to

8   prove that beyond a reasonable doubt.  And I've explained those

9   crimes to you.

10          The second -- the second element that the State must

11  prove under an accomplice liability theory is that this

12  defendant aided or did aid or agreed to aid him or her or them

13  in planning or committing the crime, and each of these crimes

14  are considered separately.

15          The third element that the State must prove beyond a

16  reasonable doubt on accomplice liability theory is that the

17  defendant's purpose was to promote or facilitate the commission

18  of the offense or offenses.

19          And fourth, the State must prove beyond a reasonable

20  doubt under an accomplice liability posture that this defendant

21  possessed a criminal state of mind that is required to be

22  proved against the person who actually committed the criminal

23  act. Each -- each crime is again separate.  Same state of mind,

24  she possessed a criminal mind -- state of mind that is required

25  to be proved against the person who actually committed the

1   crime.

2           Now remember that one acts purposely with respect to

3   his or her conduct or the result thereof if it is her conscious

4   object to engage in conduct of that nature or to cause such a

5   result.  Now aid, what do we mean when we aid someone?  Aid

6   means to assist -- assist, to support or supplement the efforts

7   of another.  And if there's an agreement to aid it means to

8   encourage by promise or assistance or support.  Now if you find

9   that Ms. Farthing with the purpose of promoting or facilitating

10  the commission of the offense or offenses aided or agreed or

11  attempted to aid Demolena and/or Christopher James in planning

12  or committing the crime or crimes then you should consider her

13  as if she committed the crimes herself.

14          Now to prove the defendant's criminal liability the

15  State does not have to prove her -- her accomplice status by

16  direct evidence of a formal plan to commit a crime.  There does

17  not have to be verbal agreement by all who are charged, the

18  proof may be circumstantial participation.  An agreement can be

19  established from conduct as well as spoken words.  Mere

20  presence at or near the scene does not make one a participant

21  in the crime nor does the failure of a spectator to interfere

22  make her a participant in the crime.  That is, mere presence is

23  however a circumstance to be considered with the other evidence

24  in determining whether she was present as an accomplice.  A

25  presence is not in itself conclusive evidence of that fact.  To

1    constitute guilt there must exist a community of purpose and

2    actual participation in the crime committed. While mere

3    presence at the scene of the perpetration of a crime does not

4    render a person a participant in it, proof that one is present

5    at the scene of the commission of a crime or crimes without

6    disapproving or opposing it is evidence from which in

7    connection with other circumstances it is possible for the jury

8    to infer that she assented thereto, she lent to it her

9    countenance and approval and was thereby aiding the same.  And

10   depending up the -- it depends upon the totality of the

11   circumstances as those circumstances appear from the evidence.

12          Now an accomplice may be convicted on proof of the

13   commission of the -- of a crime or of her complicity therein

14   even though the person who it is -- who it is claimed committed

15   the crime has not been prosecuted or has been convicted of a

16   different offense or degree of offense or has an immunity from

17   prosecution or conviction or has been acquitted; it makes no

18   difference.  Remember, that this defendant can be held to be an

19   accomplice with equal responsibility only if you find as a fact

20   that she possessed a criminal state of mind that is required to

21   be proved against the person who actually committed the

22   criminal act.

23          In order to convict the defendant as an accomplice to

24   the specific crime charged you must find that the defendant had

25   the purpose to participate in that particular crime.  She must

1    act with the purpose of promoting or facilitating the

2    commission of the substantive crime with which she is charged.

3    It is not sufficient to prove only that the defendant had

4    knowledge that another person was going to commit the crime

5    charged. The State must prove that it was the defendant's

6    conscious object that the specific conduct charged be

7    committed.

8            In sum, in order to find this defendant guilty of

9    committing the crimes of murder or armed robbery, kidnapping,

10   possession of a handgun for an unlaw purpose the State must

11   prove each of the following elements beyond a reasonable doubt;

12   one, that Ivy Demolena and/or Thomas James committed the crimes

13   of murder, kidnapping and -- of the two victims, armed robbery

14   of the two victims, possession of the firearm with the -- with

15   -- for unlawful purposes and also possession without a permit.

16   So they have the prove that, the State, beyond a reasonable

17   doubt.  They also have to prove that the defendant did aid or

18   agree to attempt to aid them in planning or committing each of

19   these crimes -- that is, planning and committing -- that she

20   agreed to aid them in planning the murder, that's the -- you

21   consider that separately, and also the -- the lesser included

22   offenses if necessary. They have to -- the State has to prove

23   that the defendant aided the -- Demolena and James in planning

24   or committing kidnapping, that she aided in the planning and

25   committing of a robbery, and that she aided in the planning and

1  the committing of possession of firearms for unlawful purposes.

2  The State has to further prove beyond a reasonable doubt that

3  this defendant's -- Ms. Farthing's purpose was to promote or

4  facilitate the commission of the offenses; you take them

5  separately again.  That was, her purpose was to promote or

6  facilitate the commission of murder, that her purpose was to

7  promote of facilitate the commission of the crime of robbery,

8  of armed robbery, that her purpose and -- was to promote and

9  facilitate the commission of the crime of kidnapping and also

10 the possession of the firearm with unlawful -- for unlawful

11 purposes.  And all the -- the lesser included offenses are also

12 included in those.  If you find that they're not guilty of the

13 offenses of murder then you consider the lesser included

14 offenses, kidnapping, you consider the criminal restraint,

15 armed robbery, and then you consider robbery.

16           The fourth element that the State has to prove beyond

17 a reasonable doubt is that Ms. Farthing possessed the criminal

18 state of mind that is required to be proved against a person

19 who actually committed the criminal act.

20           If you find that the State has proven each one of the

21 elements as -- as described above beyond a reasonable doubt

22 then you must find the defendant guilty of the charges.  Now on

23 the other hand, if you find that the State has failed to prove

24 one or more of these elements beyond a reasonable doubt then

25 you must find the defendant not guilty of a charge separately.

1            Now as I have previously instructed, any verdicts

2    rendered must be unanimous.  All 12 jurors must agree as to the

3    guilt or the not guilt -- non guilt of the defendant.  Now as I

4    have previously indicated you will initially consider whether

5    the defendant should be found not guilty or guilty of acting as

6    an accomplice of Ivy Demolena and/or Thomas Christopher James

7    with full and equal responsibility for the specific crimes

8    charged.  Now if you find that the defendant -- you find the

9    defendant guilty of a specific charge or charges then you need

10   not consider any lesser included offenses.  If however, you

11   find the defendant not guilty of acting as an accomplice of Ivy

12   Demolena and/or Thomas James on a specific crime charged then

13   you should consider whether the defendant did act as a

14   accomplice of Ivy Demolena and Thomas Christopher James but

15   with a purpose of promoting or facilitating the commission of

16   one of the lesser included offenses then the actual crime

17   charged in the indictment.  You may find that the -- Ivy

18   Demolena and -- and/or Christopher James guilty of murder,

19   purposely and knowingly find them guilty of murder, but you may

20   not consider that this defendant had the same state of mind.

21   But you can, for the purpose of promoting -- but then you must

22   -- then you can consider or you should consider whether the

23   defendant acted as an accomplice of these two individuals but

24   for a purpose of promoting or facilitating the commission of a

25   lesser included offense which is aggravated manslaughter or

1    reckless manslaughter. And that goes also for kidnapping and --

2    and the criminal restraint.  So, I'll read that again to you

3    and that's what that means, is that if -- if however, you find

4    the defendant not guilty of acting as an accomplice of Ivy

5    Demolena and Thomas James on a specific crime charged then you

6    should consider whether the defendant did act as an accomplice

7    of these two people but with the purpose of promoting or

8    facilitating the commission of a lesser offense than the actual

9    crime charged in the indictment.  Now our law recognizes that

10   two or more persons may participate in the commission of an

11   offense but each may participate therein with a different state

12   of mind.  The liability or responsibility of each participant

13   for any ensuing offense is dependent on his or her own state of

14   mind and not anyone else's.

15           Guided by these legal principles now, and if you have

16   found the defendant not guilty of the specific crime charged

17   you should then consider whether the defendant is guilty or not

18   guilty as an accomplice on the lesser charge which would be

19   aggravated manslaughter or reckless manslaughter, criminal

20   restraint or second degree robbery.

21           I will now explain -- and I -- I've explained those

22   elements to you before.  Now in considering whether the

23   defendant is guilty or not guilty as an accomplice on these --

24   on a lesser included charge remember that each person who

25   participates in the commission of an offense may do so with a

1   different state of mind and the liability or responsibility of

2   each person is dependent on his or her own state of mind and no

3   one else's.  So therefore, in order to find the defendant

4   guilty of the lesser included offense of aggravated

5   manslaughter, reckless manslaughter, criminal restraint or

6   second degree robbery under an accomplice liability theory the

7   State must prove beyond a reasonable doubt that Ivy Demolena

8   and/or Christopher James committed the crimes of murder, armed

9   robbery, kidnapping or they could also have been -- the State

10  could prove that they -- they committed beyond a reasonable

11  doubt aggravated manslaughter, criminal restraint or second

12  degree robbery as alleged.  Now they -- I'm sorry, let me

13  strike that, I'll go over it.  It does cover it here, I was

14  just trying to re -- restructure it.

15          The State must prove beyond a reasonable doubt one,

16  that Ivy Demolena and/or Thomas Christopher James committed the

17  crimes of murder, armed robbery, kidnapping -- or kidnapping as

18  alleged in the indictment for the lesser included -- or the

19  lesser included offenses of aggravated manslaughter, reckless

20  manslaughter, criminal restraint or robbery second degree.

21          Secondly the State must prove that this defendant,

22  Ms. Farthing, did aid or agree to attempt to aid them in

23  planning to commit the aggravated manslaughter or reckless

24  manslaughter, criminal restraint or robbery two.

25          Third, the State must prove that this defendant's

1   purpose was to promote or facilitate the commission of

2   aggravated manslaughter, reckless manslaughter, criminal

3   restraint or robbery two.

4          Again, everything is -- is separately considered.

5   You don't consider them that well, if it's aggravated

6   manslaughter then it has to be criminal restraint; no, they're

7   all separately different, they're all separately and different,

8   you consider them that way.

9          The fourth element the State must prove is that this

10  defendant possessed a criminal state of mind that is required

11  for the commission of aggravated manslaughter or reckless

12  manslaughter or criminal restraint or -- or robbery two --

13  robbery second degree.

14         Now if you find that the State has proven each one of

15  these elements beyond a reasonable doubt then you must find the

16  defendant guilty.  If on the other hand you find that the State

17  has failed to prove one or more of these elements beyond a

18  reasonable doubt then you must find the defendant not guilty.

19  As I previously indicated, the verdict must be unanimous. All

20  12 jurors must agree as to guilt or not guilt.

21         All right, is the lunch here?

22         THE COURT OFFICER:  I called the cafeteria, Your

23  Honor, about 15 minutes ago and they told me 15 minutes; it

24  should be here momentarily.

25         MS. BAGLIVI:  Judge, can we approach sidebar?

1          THE COURT:  Yeah.

2                      (SIDEBAR)

3          MS. BAGLIVI:  Judge, a couple of times when you were

4    talking about accomplice liability you said planning and

5    committing. Sometimes you said planning or committing, but a

6    couple -- quite a few times you said planning and committing

7    and I just want to make sure they understand it's or.

8          THE COURT:  All right.

9          MS. BAGLIVI:  And the other thing is you talk about

10   the accomplice of Thomas Christopher James and Ivy Demolena.

11   In, my summation I said there were only five people there and he

12   turned up dead.  I'm not -- I know she says that they did it,

13   but it could have been Beninio Rosario or it could have been

14   Efrim Popolayo as an accomplice to those other four.

15         THE COURT:  Yeah, well all the evidence indicates

16   that they were (inaudible) other two guys were upstairs.

17         MS. BAGLIVI:  I think if -- I mean I could go back

18   and check, but I'm sure that's what the statement is.

19         THE COURT:  No, I'm not concerned with that.  I don't

20   think they consider -- everything is -- the whole case is that

21   Ivy Demolena said --

22         MS. BAGLIVI:  She planned it; yes, I agree with you

23   but --

24         THE COURT:  (Inaudible)

25         MS. BAGLIVI:  All right.

Colloquy

41

```
 1          MR. WEICHSEL:  Judge, I -- a couple of comments.
 2  One, I think you want to again mention to the jury that it
 3  should be done in the context of the entire charge.  And I have
 4  another concern and I've been kind of thinking and thinking
 5  about it and thinking about it since the jury came back with
 6  their question regarding Lieutenant Kane's testimony.  And that
 7  is, I would -- that defendant can't be convicted merely on her
 8  own statement and apparently the only evidence regarding the
 9  gun and (inaudible) -- has to be corroborated with evidence.
10          MS. BAGLIVI:  And it was.
11          THE COURT:  I'll tell them that.
12          MR. WEICHSEL:  I think you have to -- I think you
13  have to tell the jury that.
14          MS. BAGLIVI:  But I disagree because there was --
15          THE COURT:  I'm not going to get into this right now.
16          MS. BAGLIVI:  Okay.
17                        (END OF SIDEBAR)
18          THE COURT:  All right, it has been brought to my
19  attention that I had made reference to planning and committing
20  the crimes; it's -- it's planning or committing, it's all or.
21  It's as an accomplice in which she agrees -- for example,
22  agrees or attempts to agree to in planning or committing,
23  either one, in planning or committing it, that's what I have
24  written here, that's what I thought I said, but I've been told
25  that I possibly said planning and committing it, so it's
```

1  planning or committing it.

2          You are to take -- this particular also -- this

3  instruction that I have given you within the context of the

4  entire charge that I have given you.

5          I think the indicate your lunch should be ready, so

6  what I'll do is let you have lunch and we'll come back and then

7  we'll -- we'll have the read back for you.  It will be put on

8  the T.V., you'll hear exactly what it is that was testified to

9  with regard to Mr. Kummer, all right, and then we'll have the

10 other ready too.  All right, you can retire to your -- if you

11 want to use the men's rooms or ladies' rooms upstairs in the

12 hallway you can do that too because I know you're kind of

13 cramped in there with one bathroom if that's what you want to

14 do, but don't leave the building.  All right, let them go out

15 and use the men's room in the hallway too.  I'm going to call

16 you in about a half hour tell them, would you?  About a half

17 hour and then I'll call you back in here, it's going to take

18 you a half hour.

19          (PAUSE - THE JURY LEAVES THE COURTROOM)

20          MR. WEICHSEL:  I'll be back at the office, judge?

21          MS. BAGLIVI:  Just be back in a half hour, right?

22          THE COURT:  Yeah, 20 minute after one we're going to

23 have the read back, all right?

24          MS. BAGLIVI:  Okay.

25          MR. WEICHSEL:  Fair enough.

1                    (RECESS)

2              THE COURT:  Where were you, Mr. Weichsel?

3              MR. WEICHSEL:  I'm sorry, judge.   When you get back

4    to the office and the phone starts ringing and --

5              THE COURT:  No, I understand that.  We -- on the

6    record we are going to play back that portion of Lieutenant

7    Kane's testimony surrounding the -- the Edgewater crimes.  And

8    then when we finish that we will then set forth the testimony

9    of Mr. Kummer and that's it on the tape. And we're all set for

10   that?

11             MR. WEICHSEL:  Judge, would you -- since I don't

12   think you instructed the jury initially, in your initial

13   charge, I've been thinking about it, would you instruct the

14   jury that there has to be corroboration of defendant's

15   statement?

16             MS. BAGLIVI:  Judge, I -- I disagree.  I brought up

17   case law because Mr. Weichsel brought this up earlier this

18   morning. The issue of corroboration is a matter of law for the

19   court to decide.  And if the court had decided that there was

20   nothing to corroborate the defendant's testimony --

21             THE COURT:  Let me see the law please.

22             MS. BAGLIVI:  Sure.  I have State versus Boyer

23   (phonetic), State versus Frisco (phonetic), and State versus

24   Kreeger (phonetic).  And Kreeger is the case that resolved the

25   split in the Appellate Division, that's a Supreme Court case.

1    THE COURT:  Are you familiar with <u>Kreeger</u>?

2         MR. WEICHSEL:  No, judge.  Judge, the corroboration

3    is as to one issue and one issue only because that's what the

4    jury is focusing on this, whether there was a gun used in -- in

5    -- in the -- in the Polites crime.  And, judge, unless I'm

6    incorrect, the only evidence regarding the fact of handguns in

7    Edgewater comes from this -- this defendant's statement, judge.

8    Unlike the Hippman crime in Hackensack where Hippman testified

9    there was a gun being used, the only evidence regarding a

10   weapon or handgun or -- or anything comes from -- from Jamie

11   Farthing.

12        MS. BAGLIVI:  Judge, the law says that you do not

13   have to corroborate each and everything a defendant says in

14   their statement.  The jury is not to get involved in the issue

15   of corroboration, that is an issue as a matter of law as the

16   cases say for the court to decide.  The -- the cases say that

17   you only have to corroborate a statement just to show that it

18   is trustworthy.  You do not have to corroborate each and every

19   single thing that she says in the statement, the law is clear

20   on that in the -- and in the Supreme Court <u>Kreeger</u> says that,

21   that corroboration -- I mean there were some issues in <u>Kreeger</u>

22   that talked about they didn't corroborate certain things that

23   happened during that case which was an arson case.  And the

24   court held that you do not have to do that, that corroboration

25   is -- only goes to the -- is the statement trustworthy enough,

1   have enough things in there been corroborated.  Additionally as
2   I said, corroboration is a matter of law and again Kreeger says
3   that, for the court to decide.  If the court felt that the
4   statement alone at the end of the State's case was not
5   corroborated enough that there's no proof other than her own
6   statement that this crime was committed and she did it the
7   court would have dismissed it at the end of the State's case.
8   It does not require every single element and every single
9   statement of the defendant to be corroborated by evidence
10  because if that were the case then many times when you have
11  murder cases with only one person involved you -- you would
12  have no corroboration of the defendant's statement because the
13  only other person there is dead, and that is not what the law
14  requires.

15          MR. WEICHSEL:  Judge, it seems to me that this
16  question of a gun is a key element in the case and -- and in
17  the minds of the jury. And I think the jury can be instructed
18  that -- that as to that that -- that there is no corroboration.

19          THE COURT:  The issue really isn't the corroboration
20  of a statement, the issue is the trustworthiness of the
21  statement itself which has been presented to the jury already
22  by the court.  And then of course in Kreeger they mention that
23  the -- taking a portion of State versus Johnson and State
24  versus Gill (phonetic), these are 1960 cases and one that goes
25  back to 1828.  The reason for the rule is to avoid the danger

1   of convicting a defendant solely out of his or her mouth of a

2   crime that never occurred or a crime committed.  And to ask the

3   jury that -- or to tell the jury at this time that one must --

4   anything that is said on this confession now that they're going

5   to hear has to be corroborated -- that's what you're asking me

6   to say, is that correct, with other evidence?

7           MR. WEICHSEL:  No, I -- judge I -- it's actually to

8   the issue of the gun which is really a key issue here; was

9   there a gun there.  I mean it hasn't been corroborated, judge;

10  there's no other evidence regarding it.

11          THE COURT:  There's no other evidence about a lot of

12  things that happened in Edgewater except the confession of the

13  defendant.

14          MR. WEICHSEL:  That's right, jude, and --

15          THE COURT:  So how are we going to corroborate all of

16  those other things? There was a gun found.

17          MR. WEICHSEL:  There was a gun found in the Crossbay

18  Motel.

19          THE COURT:  Yes, there were guns found, there was

20  evidence that a gun was used the day before, there's evidence

21  that this defendant used a gun; this is all supportive evidence

22  distinct and separate that the jury could infer that a gun was

23  also at this place.  Evidence of both crimes -- items taken

24  from both Hippman and Polites were found together when

25  everything was discovered, so there's all connected -- there's

1  enough support there that a statement -- I'm -- I agree with

2  the prosecution.  The -- a statement to the jury now asking

3  them that they have to corroborate everything may be sending

4  them to a -- into an area that would be very confusing and mis

5  -- and misdirected.  There's enough support here of the

6  evidence that's been presented by the State that the

7  defendant's statement as that there was a gun there and

8  everything else indicates there was a gun.  They have found two

9  guns.  There is testimony that at Hippman's they used guns. And

10  they found -- they found the guns in the luggage of the co-

11  defendants.  So you -- you're -- under no circumstances, I'm

12  not going to -- your request is denied.

13           Now bring up the jury please.

14             (PAUSE - THE JURY ENTERS THE COURTROOM)

15           THE COURT:  Pull the chair back so you can see there;

16  you want to see the monitor

17           MR. WEICHSEL:  Judge, can I bring my chair out?

18           MS. BAGLIVI:  Can you turn this around to the jury.

19           THE COURT:  There's one over here, Mr. Weichsel;

20  leave it there, take this one.

21           MR. WEICHSEL:  Okay, sorry.

22           THE COURT:  Mr. Weichsel, you can bring that chair

23  down if you want.

24           All right, ladies and gentlemen, I'm going to -- we

25  have the tapes ready for a review of Lieutenant Kane's

1   testimony surrounding the Edgewater crimes. The -- the portion

2   of that tape which we reviewed, if you recall when he gave the

3   testimony and he read the statement, if I'm correct, read the

4   statement of the defendant, the alleged statement of the

5   defendant.  There was a portion -- we took a break and we broke

6   between the -- the colloquy as to the Hackensack crimes. We

7   took a break and came back and I have it starting just as we

8   started the break.  And then we came back and then he continued

9   reading through the statement with regard to the Edgewater, all

10  right?  When we finish that we then will go into the testimony

11  of Mr. Kummer.  Now Mr. Kummer's testimony as we estimate is

12  about an hour, so we have that -- you want cross examination

13  and redirect.  So we have that much time to stay here; so just

14  get yourselves set for that.  But we'll first do the Lieutenant

15  Kane's.  Now my court clerk says that she needs about 30

16  seconds to get this set.

17                    (OFF THE RECORD/ON THE RECORD)

18           MR. WEICHSEL:  My client tells me when she went back

19  to the jail yesterday at I guess 4:30, quarter to five,

20  whatever time it was, someone had told the people at her part

21  of the jail that -- that she was suicidal and they put her on

22  suicide watch and they gave her -- what was that, a paper gown,

23  Jamie?  A paper gown that she had to wear all last night and

24  she froze and she's wondering if it would be possible for her

25  to go back to the jail now before the people in charge leave at

1   4:00 because she says like I'm not suicidal, I'm not going to

2   kill myself, I don't know why they did this and I had a

3   horrible night, I didn't sleep all night because I -- I froze.

4           THE COURT:  The answer is no, she can't go back to

5   the jail now, she has to be on deck.  If you want to make a

6   call over there and find out yourself you can.  I have no

7   control over the jail, I told you that before.  You can call

8   over there, Mr. Weichsel, and find out what's going on, okay?

9           MR. WEICHSEL:  Okay, thank you.

10              (OFF THE RECORD/ON THE RECORD)

11          THE COURT:  All right, please be seated.

12          MR. WEICHSEL:  Judge, can I have a -- if you have

13  some extra verdict sheets can I have two, one for me and one

14  for my client?

15          THE COURT:  Yeah, I have them.  Ms. Baglivi, you have

16  a verdict sheet?

17          MS. BAGLIVI:  I have one, thank you, judge.

18          MR. WEICHSEL:  Thank you.

19          THE COURT:  I understand we have reached a verdict.

20  Bring up the jury please?  Bring in the alternates?

21          THE COURT OFFICER:  Yes, Your Honor.

22              (PAUSE - THE JURY ENTERS THE COURTROOM)

23          THE COURT:  All right, ladies and gentlemen of the

24  jury, I understand a note I received that you have reached a

25  verdict, is that correct?

```
 1              THE FOREPERSON:  Yes, it is.

 2              THE COURT:  Ms. Foreperson, will you please stand?

 3    Now the verdict that you have reached is on all charges; charge

 4    one, two, three, four, five, six, seven, eight, nine and ten

 5    and 11, is that correct?

 6              THE FOREPERSON:  Yes, Your Honor.

 7              THE COURT:  Are all of the verdict unanimous?

 8              THE FOREPERSON:  Yes.

 9              THE COURT:  All right, as to the questions.  How do

10    you find as to the charge that, "Jamie Farthing on August 4,

11    1994 did kidnap Robert Hippman, not guilty or guilty?"

12              THE FOREPERSON:  Guilty, Your Honor.

13              THE COURT:  You did not -- oh, then you were asked to

14    consider the next question if it was found guilty, you

15    considered the next question?

16              THE FOREPERSON:  Yes, we did.

17              THE COURT:  All right, "1-A, did Jamie Farthing

18    release the victim, Robert Hippman, unharmed prior to her

19    apprehension, yes or no?"

20              THE FOREPERSON:  No.

21              THE COURT:  Next question, "Did Jamie Farthing

22    release the victim, Robert Hippman, in a safe place prior to

23    her apprehension, yes or no?"

24              THE FOREPERSON:  No.

25              THE COURT:  Question 1-C you did not answer, is that
```

1  correct?

2         THE FOREPERSON:  That's correct.

3         THE COURT:  Charge number two, "How do you find as to

4  the charge that Jamie Farthing on August 4, 1994 while in the

5  course of committing a theft did use force upon Robert Hippman,

6  not guilty or guilty?"

7         THE FOREPERSON:  Guilty.

8         THE COURT:  If you found the defendant guilty of

9  robbery then you were to answer the next question.  "During the

10 course of the robbery was she armed with a deadly weapon, yes

11 or no?"

12        THE FOREPERSON:  Yes.

13        THE COURT:  Charge three, "How do you find as to the

14 charge that Jamie Farthing on August 4, 1994 did knowingly and

15 unlawfully possess certain weapons to wit a 32 caliber revolver

16 and a Rossi 38 caliber revolver with the purpose to use it

17 unlawfully against the person or property of another, not

18 guilty or guilty?"

19        THE FOREPERSON:  Guilty.

20        THE COURT:  Count -- charge four, "How do you find as

21 to the charge that Jamie Farthing on August 4, 1994 did

22 knowingly and unlawfully possess certain weapons, namely an H&R

23 32 caliber revolver and a Rossi 38 caliber revolver without

24 having obtained a permit to carry same, not guilty or guilty?"

25        THE FOREPERSON:  Guilty.

1      THE COURT:  Charge number five, "How do you find as

2   to the charge that Jamie Farthing did commit murder, that is

3   that she did purposely or knowingly cause the death or serious

4   bodily injury resulting in the death of James Polites on August

5   5, 1994, not guilty or guilty?"

6      THE FOREPERSON:  Guilty.

7      THE COURT:  You did not answer six and --

8      THE FOREPERSON:  Six, or 5-A or 5-B.

9      THE COURT:  I'm sorry, 5-A or 5-B, you did not answer

10   that?  You proceeded to charge six.

11      Charge six, "How do you find as to the charge that

12   Jamie Farthing while in the course of committing the crime of

13   kidnapping she or another person did cause the death of James

14   Polites on August 5, 1994, not guilty or guilty?"

15      THE FOREPERSON:  Guilty.

16      THE COURT:  Charge number seven, "How do you find as

17   to the charge that Jamie Farthing while in the course of

18   committing the crime of robbery she or another person did cause

19   the death of James Polites on August 5, 1994, not guilty or

20   guilty?"

21      THE FOREPERSON:  Guilty.

22      THE COURT:  Charge five.

23      THE FOREPERSON:  Eight.

24      THE COURT:  I'm sorry, charge eight.  "How do you

25   find as to the charge that Jamie Farthing on August 5, 1994 did

1   kidnap James Polites, not guilty or guilty?"

2               THE FOREPERSON:  Guilty.

3               THE COURT:  Question number 8-A, "Did the defendant,

4   Jamie Farthing, release the victim James Polites unharmed prior

5   to her apprehension, yes or no?"

6               THE FOREPERSON:  No.

7               THE COURT:  Question 8-B, "Did Jamie Farthing release

8   the victim, James Polites, in a safe place prior to her

9   apprehension, yes or no?"

10              THE FOREPERSON:  No.

11              THE COURT:  You did not consider 8-C.  Charge nine,

12  "How do you find as to the charge that Jamie Farthing on August

13  5, 1994 while in the course of committing a theft did use force

14  upon James Polites, not guilty or guilty?"

15              THE FOREPERSON:  Guilty.

16              THE COURT:  "During the course of the robbery was she

17  armed with a deadly weapon, yes or no?"

18              THE FOREPERSON:  Yes.

19              THE COURT:  Charge ten, "How do you find as to the

20  charge that Jamie Farthing on August 5, 1994 did knowingly and

21  unlawfully possess certain weapons to wit a 32 caliber revolver

22  and a Rossi 38 caliber revolver with the purpose to use it

23  unlawfully against the person of another, not guilty or

24  guilty?"

25              THE FOREPERSON:  Guilty.

1    THE COURT:  Charge 11, "How do you find as to the

2 charge that Jamie Farthing on August 5, 1994 did knowingly and

3 unlawfully possess certain weapons, the 32 caliber revolver and

4 the Rossi 38 caliber revolver without having a permit to carry

5 same, not guilty or guilty?"

6    THE FOREPERSON:  Guilty.

7    THE COURT:  Mr. Weichsel?

8    MR. WEICHSEL:  Judge, I'd ask that the jury be

9 polled, Your Honor.

10    THE COURT:  All right, ladies and gentlemen of the

11 jury, I want you to answer yes to my question.  Now we're going

12 to take a roll, it's called polling the jury.

13    On the first count, charge one, if you agree with the

14 verdict that Jamie Farthing did kidnap Robert Hippman and did

15 not -- did not release him unharmed prior to her apprehension

16 or in a safe place prior to her apprehension, please answer yes

17 if you agree with that verdict.

18    (ALL JURORS ANSWER YES)

19    THE COURT:  As to the count, count two, if you agree

20 with the verdict that she is guilty -- that Jamie

21 Farthing is guilty of robbery, armed robbery or robbery while

22 armed with a deadly weapon, if you verdict was guilty say yes

23 when your name is called.

24    (ALL JURORS ANSWER YES)

25    THE COURT:  If you agree with charge three and four,

1  that is that Jamie Farthing possessed those two handguns with

2  the purpose to use them unlawfully against the person of

3  another and did not have a permit to carry same, if you agree

4  that she's guilty of those two charges please say yes when your

5  name is called.

6                    (ALL JURORS ANSWER YES)

7          THE COURT:  Do you agree with the verdict on charge

8  number five that Jamie Farthing did commit murder, that is she

9  purposely or knowingly caused the death or serious bodily

10 injury resulting in the death of James Polites on August 5,

11 1994 as guilty of that charge, please say yes when your name is

12 called.

13                   (ALL JURORS ANSWER YES)

14         THE COURT:  As to the charge that Jamie Farthing did

15 in the course of committing the crime of kidnapping, she or

16 another did cause the death of James Polites on August 5, 1994,

17 guilty of that charge, if you agree with that please answer yes

18 when your name is called.

19                   (ALL JURORS ANSWER YES)

20         THE COURT:  Charge seven, if you agree that Jamie

21 Farthing while in the course of committing the crime of robbery

22 she or another person did cause the death of Jamie Polites on

23 August 5, 1994, if you agree that the charge -- that she's

24 guilty of that charge please answer when your name is called

25 yes.

```
 1                    (ALL JURORS ANSWER YES)

 2            THE COURT:  As to the kidnapping charge that Jamie

 3   Farthing on August 5, 1994 did kidnap James Polites and did not

 4   -- and did not release him unharmed prior to her apprehension

 5   or in a safe place prior to her apprehension.  If you agree

 6   with the verdict of guilty to that charge please answer yes.

 7                    (ALL JURORS ANSWER YES)

 8            THE COURT:  Charge nine, if you agree that the

 9   defendant is guilty of robbery in that she in the course of

10   committing a theft she used force upon James Polites on August

11   5, 1994 and she was armed with a deadly weapon.  If you agree

12   with that verdict answer yes when your name is called please?

13                    (ALL JURORS ANSWER YES)

14            THE COURT:  All right, charges ten and 11, if you

15   find that the defendant is guilty of possessing certain

16   weapons, handguns, to use unlawfully against the person or

17   property of another and having no license -- or not permit to

18   carry same and you find that she's guilty of these two charges

19   please answer yes when your name is called.

20                    (ALL JURORS ANSWER YES)

21            THE COURT:  Anything else, Mr. Weichsel?

22            MR. WEICHSEL:  No, Your Honor.

23            THE COURT:  All right.  I include the two alternates

24   in this remark, the remarks I have to make now.  You have --

25   you must realize now the function that you have performed is
```

Colloquy                                                                    57

1   the most important task that you may ever be called upon to

2   fulfill.  Now with the return of your verdict your services in

3   the case is complete.  Now you came into this courtroom in the

4   beginning of November and I'm sure that you leave here a little

5   changed.  You were invited into a world that you're not

6   familiar with and you were exposed to a world that you had to

7   make decisions about.  You have done that nobly and you've done

8   that to a great credit to the citizens of Bergen County and the

9   State of New Jersey.

10          Of course the key to your function has been the free

11  discussion among yourselves during your deliberations.  It is

12  essential to the continuation of fair administration of justice

13  that those discussions remain solely within your minds.  Upon

14  your discharge you are not required except upon order of this

15  court to discuss your deliberations or your verdict with

16  anyone.  Additionally no person connected with this trial is

17  permitted under the rules of the court to engage you in

18  conversation about the matter or your role in its outcome.  All

19  jurors have a right to expect that their communications with

20  their fellow jurors during deliberations will remain

21  confidential.  It is in the public interest that there be the

22  utmost freedom of discussion in the jury room and that each

23  juror be permitted to express his or her views without fear of

24  incurring public scorn or the anger of any of the litigants.

25  Under no circumstances should you make a statement which you

1    would not be willing to repeat under oath in open court in the

2    presence of your fellow jurors.

3            Now on behalf of the State of New Jersey, as I

4    mentioned to you earlier, I -- we recognize certainly that your

5    period of stay with us at the courthouse complex has entailed

6    some sacrifice on your part, in your case a great deal of

7    sacrifice.  But we trust that you leave here appreciative of

8    the fact that you have made a meaningful contribution to the

9    judicial system and we hope that you have profited by the

10   experience and that you have gained.  On behalf of the County

11   of Bergen I want to thank you for the services that you

12   rendered to our judicial system as judges of the facts in this

13   case.  It's been a pleasure and an honor to work with you.  You

14   are now dismissed.

15           (THE JURY IS DISMISSED AND LEAVES THE COURTROOM)

16           THE COURT:  Is there any bail problem in this?

17           MS. BAGLIVI:  Judge, the bail is $1 million.  It

18   seems ridiculous because she's going to go to New York as a

19   detainer, but I would just ask that you revoke it.

20           MR. WEICHSEL:  Judge, it's academic.  I mean she

21   can't --

22           THE COURT:  Well bail is revoked and sentencing, Ms.

23   Farthing, is -- will you please stand?  Your sentencing date is

24   set for February 7, 1997.

25           MS. BAGLIVI:  I'm sorry, 7th?

1          THE COURT:  February 7th 1997.

2          MS. BAGLIVI:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          MS. BAGLIVI:  May we leave the evidence locked in the

5    holding cell and then tomorrow morning I'll be over first thing

6    to go through it and make sure it's all there?

7          THE COURT:  Is there any problem with locking it in

8    the holding cell?

9          MR. WEICHSEL:  I have no objection.

10         THE COURT:  Well I'm not concerned about your

11   objection so much as evidence being lost and I don't want the

12   court to take that responsibility if it can help it.  We have

13   the key to the holding cell?

14         THE COURT OFFICER:  Yes, sir.

15         THE COURT:  All right, we -- we did that last night?

16   We can do it tomorrow and then you will be available to let

17   them in?

18         THE COURT OFFICER:  Yes, we'll be here tomorrow.

19         MS. BAGLIVI:  We'll be up first thing in the morning

20   to go through it.

21         THE COURT:  Okay, thank you, this court is adjourned.

22         MS. BAGLIVI:  Thank you.

23                    *           *            *

24

25

## CERTIFICATION

I, Dolores Hastings, the assigned transcriber, do hereby certify the foregoing transcript of proceedings in the Bergen County Superior Court, Law Division, Criminal Part, on November 26, 1996, on tape number 192-96, index number from 00:00:00 to 01:48:46, is prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings as recorded.

_____

Dolores Hastings

KEMCO TRANS, INC.

Agency Name

_____417_____

AOC Number

7/4/97

Date