EXHIBIT 35

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - BERGEN COUNTY
CRIMINAL PART
INDICTMENT NO. 95-07-0889
APP. DIV. NO.

                                    :

STATE OF NEW JERSEY,

                                    :

          Complainant,

                                    :         TRANSCRIPT

          vs.

                                    :              OF

JAMIE FARTHING,

                                    :         SENTENCE

          Defendant.                :

---------------------------------

                    Place:  Bergen County Courthouse
                            10 Main Street
                            Hackensack, New Jersey 07601

                    Date:   February 2, 2001

B E F O R E:

     HONORABLE TIMOTHY J. SULLIVAN, J.S.C.

TRANSCRIPT ORDERED BY:

     Office of the Public Defender, Appellate Section

A P P E A R A N C E S:

     PATRICIA BAGLIVI, ESQ.,
     Assistant Prosecutor,
     Attorney for the State.

     JOHN L. WEICHSEL, ESQ.,
     Attorneys for the Defendant.

                              Video recorded by:  N/A
**************************************************************
          RAPID TRANSCRIPT SERVICE, INC.
              Stefanie Lucas, Trainee
                    4 Elodie Lane
              Randolph, New Jersey 07869
          (973)328-1730    FAX (973) 328-8016
**************************************************************

<u>I N D E X</u>
<u>2/2/01</u>

<u>Page</u>

<u>ARGUMENT</u>
    By Mr. Weichsel                  4, 11
    By Ms. Baglivi                   8

<u>COURT SENTENCE</u>                        12

1              THE COURT:  All right.  This is the matter

2    of The State of New Jersey v. Jamie Farthing.

3              Your appearances, Counsels, please?

4              MS. BAGLIVI:  Patricia Baglivi, Assistant

5    Prosecutor for the State.

6              MR. WEICHSEL:  John Weichsel, 79 Main

7    Street, Hackensack, for Jamie Farthing.

8              THE COURT:  We have received from the

9    Appellate Division decision wherein they set aside

10   the verdict of the jury regarding Count No. -- which

11   one was it?  The knowing and purposely murder, which

12   is Count No. Seven involving James Politas

13   (phonetic).

14             The Appellate Division also recommended --

15   not recommended, but directed a -- that the matter be

16   retried if the State wishes to do so.

17             What's the State's position on this?

18             MS. BAGLIVI:  No, Judge.  We will not

19   retry the murder since they've left the founding

20   murder conviction alone.

21             THE COURT: All right.  So let the record

22   reflect that the State has withdrawn its Count No.

23   Seven of the Indictment No. 889-95, which is knowing

24   and purposely causing the death of James Politas.

25   Otherwise, the Count Eight, Nine, Ten, Eleven,

1    Twelve, Thirteen are all -- she has been found guilty

2    of all of those.

3              MS. BAGLIVI:  One, Two, Three and Four.

4              THE COURT:  And One, Two, Three and Four,

5    involving Mr. Hipman (phonetic) here in Hackensack

6    and we are here now to restructure the sentencing.

7              Is that correct?

8              MS. BAGLIVI:  Correct.

9              MR. WEICHSEL:  That's correct, Your Honor.

10             THE COURT:  Mr. Weichsel, do you want to

11   be heard on that before I --

12             MR. WEICHSEL:  Very briefly, Judge.

13             The original sentence of the Court was

14   life --

15             THE COURT:  I'm sorry.  Did you get the

16   update of the -- I had an update of her record for

17   today's purposes.

18             MR. WEICHSEL:  No, I did not --

19             MS. BAGLIVI:  No, I did not.

20             MR. WEICHSEL:  -- Judge.

21             THE COURT:  Well, I'd just then -- well,

22   let me show it to you and then hand it back to me.

23             (Court confers with clerk)

24             MR. WEICHSEL:  Judge, I've read it.

25   That's in accord with my understanding.

1          THE COURT:  All right.  Let me hear you,

2     Mr. Weichsel.

3          MR. WEICHSEL:  I've had an opportunity to

4     read that, Judge.

5          The original sentence of this Court was

6     life, plus 60, with a parole disqualifier of 40

7     years.  The Appellate Division has now reversed the

8     conviction of a purposeful and knowing murder and the

9     Court must resentence Ms. Farthing.

10         Since she has been incarcerated, Judge,

11    Ms. Farthing has taken advantage of opportunities at

12    prison in terms of work and schooling.  She is now

13    working at a telemarketing job and doing data entry.

14    She is working double shifts, sometimes from 8 a.m.

15    to 9 p.m. and she's being paid the munificent sum of

16    53 cents per hour out of which the State takes the

17    various VCCB and DEDR penalties that were imposed by

18    the Court, as well as a two-dollar transaction fee.

19         She is on a list to get into college.  She

20    is doing whatever she can to rehabilitate herself to

21    eventually become a useful citizen of society.  She

22    has also had a long time, since this trial was in the

23    fall of 1996, to reflect and think about what

24    happened during these incidents which occurred back

25    in 1994.  She has been incarcerated now approximately

1    almost seven years, Judge.

2            I would ask the Court, in fashioning a

3    sentence for Ms. Farthing, to consider both her age

4    at the time of the offense, the level of culpability

5    of Ms. Farthing, to the codefendants Ivy DeMolina

6    (phonetic) and Thomas Christopher James.  I would ask

7    the Court to take all of that into account.  I would

8    ask the Court, in fashioning a sentence, to give Ms.

9    Farthing some hope.

10           On the felony murder, Judge, the minimum

11   sentence that she must receive is 30 years without

12   parole and that is obvious, Judge.  Originally, the

13   Court sentenced the kidnapping and the armed robbery

14   consecutive to the felony murder -- the purposeful

15   and knowing murder.

16           The Court was under the impression that it

17   must sentence the kidnapping consecutively.  I do not

18   believe that is the case.  That is something which

19   was raised on appeal, but not dealt with by the

20   Appellate Division, due to the fact that the matter

21   was being remanded to your court for resentencing, in

22   light of the Appellate Division's opinion.

23           I would ask the Court to fashion a

24   sentence that while obviously it's going to be

25   extremely punitive as to Ms. Farthing will give her

1    some hope, some light at the end of the  tunnel.  The

2    earliest she could ever be -- hope to be eligible for

3    parole would be at the age 48 years, after having

4    served 30 years.  I ask the Court to sentence Ms.

5    Farthing to a 30-year sentence with a period of

6    parole ineligibility for 30 years and the sentences

7    on the other counts be concurrent with those

8    sentences.

9           I've had an opportunity to review the

10   sentencing memorandum prepared by the State.  I

11   disagree with the State contentions and I would ask

12   the Court to seriously consider that in light of what

13   Ms. Farthing has done in prison and in light of the

14   fact that the Appellate Division reversing the

15   purposeful and knowing murder.

16           Thank you.

17           THE COURT:  Mr. Weichsel, with the

18   sentence that was imposed by the courts in the State

19   of New York, was that imposed to run consecutive or

20   concurrent to her sentence --

21           MR. WEICHSEL:  I believe that sentence was

22   to run concurrent.  That's my client's understanding.

23           THE COURT:  Concurrent to the New Jersey

24   sentence?

25           MR. WEICHSEL:  Concurrent to the New

1    Jersey sentence.  That's my client's -- and I have

2    seen nothing in writing from New York, but that's my

3    client's understanding.

4                (Counsel confers with client)

5                THE COURT:  It doesn't indicate in the

6    information that I received.

7                Do you know whether it was consecutive --

8                MS. BAGLIVI:  No. I just --

9                THE COURT:  -- or not?

10               MS. BAGLIVI:  -- saw what was in that

11   document, but I do believe it was concurrent.

12               THE COURT:  All right.

13               Ms. Farthing, you have anything you want

14   to say?

15               MR. WEICHSEL:  I had -- excuse me, Judge.

16               THE COURT:  Do you have anything you want

17   to say?  I did receive your letter?  Is that it?

18               MS. BAGLIVI:  I wasn't aware there was a

19   letter submitted.  Is there anything the State could

20   address or know about?

21               THE COURT: No.  She was -- you want to see

22   it?

23               MR. WEICHSEL:  I haven't seen it either,

24   Judge.

25               THE COURT:  All right.

1          MS. BAGLIVI:  Judge, I'll just be brief in

2    my comments.  I --

3          THE COURT:  I don't where it is.

4          Go ahead.

5          MS. BAGLIVI:   Judge, I did submit a

6    sentencing brief on this matter and, Judge, the

7    Appellate Division did reverse the purposeful or

8    knowing, but there is still the felony murder it left

9    to be sentenced on and murder is murder, if the

10   legislature has determined that it should be 30 years

11   minimum up to life in prison.

12         Judge, I don't think in resentencing her

13   on the felony murder, the Court -- Mr. Weichsel will

14   stand here and say, well, things have changed.  Ms.

15   Farthing is now working; she's trying to make her --

16   a life better for herself; she's wanted to get into

17   college and take correspondence courses and all of

18   things, I guess, he's saying should mitigate in you

19   lowering her sentence.

20         Judge, what I would point out is and what

21   Mr. Weichsel fails to point out is that may be true,

22   that she is now trying to better her life, but at the

23   time she was sentenced, what you didn't have before

24   the Court, what you have now before you is the fact

25   that she's been convicted of a second murder in New

1    York.

2              At the time you sentenced her on the first

3    one, you sentenced her to life, 30 years without

4    parole on the murder and she had no priors other than

5    that minor thing down in Georgia.  But, Your Honor, I

6    submitted the Court's transcript to Your Honor

7    because I know it was many years ago.  I submitted it

8    to Mr. Weichsel.  Your Honor pointed out that this

9    was a diabolical act, a diabolical episode.  This

10   woman showed no remorse.  She hog-tied Mr. Politas

11   and then participated in all these crimes that led to

12   the death of Mr. Politas.

13             So at the time, Your Honor, even without a

14   prior murder, you gave her life, 30 years without

15   parole.  Now she comes before you and she says, well,

16   I'm working, I want to go to college, I want a life,

17   I want to see light at the end of the tunnel.  Well,

18   Judge, the fact is that she's now convicted of

19   another crime and I'm not saying give her more of a

20   sentence, but I'm saying it's almost the same

21   sentence.

22             It is murder.  Our legislatures determine

23   whether it's felony murder or purposeful or knowing

24   murder.  It's still life, 30 years without parole.

25   Then Mr. Weichsel says, well, I would like concurrent

1    sentences and I don't know if he's referring to

2    concurrent with the Hipman crimes or just concurrent

3    with the kidnapping and as I pointed out in  my brief

4    and I did submit a copy of the Appellate Division

5    brief by the Attorney General that while it was not

6    required or was not -- Your Honor was not obligated

7    to give a consecutive sentence for the kidnapping of

8    Mr. Politas and the murder of Mr. Politas, the Court

9    could do so and found a lot of different factors

10   here.

11            And, as I pointed out in my brief, the

12   goals of the kidnapping and the murder were different

13   goals here.  They were -- the kidnapping, the hog-

14   tying of Mr. Politas was done to facilitate the

15   commission of the robbery; so that they could ransack

16   his house and take his property.

17            That is a different goal and a different

18   objective than the killing.  The killing was done --

19   and Your Honor heard the testimony -- it was done so

20   that -- not Jamie Farthing -- so that Ivy DeMolina

21   could escape detection.  So the goals here were

22   completely different.

23            And while I realize it's the same victim

24   and it is discretionary with the Court, the Court can

25   impose a kidnapping consecutive to the felony murder,

1    armed robbery and that would be perfectly proper and

2    I think the facts in this case bear it out.

3            But that be said, I think there's no

4    reason to give her a concurrent sentence to the

5    Hipman crime because, Judge, you have separate

6    victims, separate days.  As Your Honor pointed out in

7    the transcript, different harms on different victims.

8    To give her anything less than life, 30 years without

9    parole, when in reality if she in fact got a

10   concurrent sentence in New York, she got a free crime

11   anyway.

12           I think life, plus 60, 40 years without

13   parole is an appropriate sentence and I would ask

14   that you only just change the life, 30 years without

15   parole on the murder and then put that on the felony

16   murder, life, 30 years without parole and keep

17   everything else -- keep everything, all the other

18   sentences the same with regards to --

19           THE COURT:  You're --

20           MS. BAGLIVI:  -- concurrent --

21           THE COURT:  -- asking for life on the

22   felony murder?

23           MS. BAGLIVI:  Right.  Life, 30 years

24   without parole on the felony murder.

25           THE COURT:  Okay.  I got you.

1          I --

2          MR. WEICHSEL:  Judge, can I briefly

3   respond?

4          THE COURT:  Yes.

5          MR. WEICHSEL:  Obviously, when the Court

6   sentenced Ms. Farthing on February 14th, 1997, the

7   Court was aware of the New York murder charges at the

8   time.  I don't think that's any different than what

9   we have before the count -- before the Court now.

10          Number two, Judge, in terms of the

11   kidnapping being consecutive.   The Court is now

12   sentencing Ms. Farthing on two counts of felony

13   murder.  Felony murder, kidnapping felony murder,

14   robbery.  I'm asking the Court to exercise its

15   discretion, not to make the kidnapping consecutive to

16   the felony murder.

17          I'm also asking the Court, in light of the

18   fact that the purposeful and knowing murder was

19   reversed, to sentence Ms. Farthing to 30 years with

20   no parole eligibility for 30 years on the felony

21   murder, with that being the sentence.

22          Thank you.

23          THE COURT:  Thank you.

24          I understand what you're asking.  I

25   understand what the State's asking.

1          I had an opportunity to -- with -- the

2    Prosecutor submitted a memorandum with regard to this

3    sentencing.

4          Now, Ms. Farthing, would you please stand?

5          And I had an opportunity -- they

6    submitted, and I appreciate it, my -- the sentencing

7    transcript of when I did sentence Ms. Farthing back

8    in February of 1997, initially, and I read it over

9    again and it brought back a great deal of my own

10   feelings and my own thoughts about this case.

11         I guess what happens when you sit on these

12   kinds of cases is that you kind of -- in order to

13   live your life, one's life -- attorneys are the same,

14   I suppose, as judges.  There are certain things you

15   block out and you just move on.  You remember the

16   case, but there are some of the details in the case

17   that a family never can block out.  But somehow you

18   let it go.

19         But, you know, when I read the transcript

20   again after -- it's almost three years to the day.

21   No.  Let's see.  Four years, four years to the day

22   and it just churned up everything again as to what

23   was involved in this case and my findings at the time

24   and how we all struggled with it; and how I initially

25   had said that everybody in the courtroom was a loser,

1    including the defendant, the families.

2          And I even quoted Mr. Cosby, if you

3    remember, he had just lost his son and some kind of

4    reference to the fact that how -- what a family feels

5    like and his reference was that you only -- you have

6    to be a parent to have lost a child to understand how

7    he felt and I expressed that with regard to the

8    Politas family.  I could not imagine the feeling.

9    And I remember reviewing those kinds of situations.

10         None of that's changed, you see.  And

11   that's what I read in the transcript.  Those elements

12   are there.  I made findings at the time regarding Ms.

13   Farthing and those findings have changed very little.

14   Knowledge and purpose of the -- knowing and purposely

15   knowing Mr. Politas, I could understand when I went

16   through the Appellate Division's review of the case,

17   how we -- very possibly, it wasn't there legal wise

18   that she had full knowledge of what was going on.

19         We weren't -- the State didn't prove it

20   using the evidence they had.  I have no quarrel at

21   all with the Appellate Division's decision on the

22   matter.  In fact, I appreciate the fact that they

23   considered the rest of the case and affirmed it.

24         So here we are.  They're asking us now

25   to -- in light of their decision that we resentence

1    or restructure the sentence and I go back over the

2    findings that I made at the time of the original

3    sentence and I adopt them and they become part of

4    this record as my findings and basically, I'll just

5    go through them quickly.

6            With regard to Count One, which is the

7    kidnapping of Robert Hipman.  You -- I had sentenced

8    you and -- to a sentence of 30 years and on the

9    robbery, Count Two, I sentenced you to 20 years with

10   a 10-year period of parole ineligibility.  Possession

11   of a gun for unlawful purpose, a Graves Act, which

12   merged with Number Two, which gives you the reason

13   for the stip, as well as the factors of the stip on

14   the first degree armed robbery; then for the

15   possession of the weapon without a permit.

16           When I was reading this particular

17   transcript again, I was reminded of the fact that the

18   role you played in Mr. Hipman's kidnapping and

19   robbery was one in which Mr. Hipman, by some stroke,

20   was not murdered by your gang.  He testified and was

21   able to tell us what happened and you were the one

22   with the gun and you were the one that put the gun to

23   his head and he said that.  He said, she did it.

24           So to me that was a separate and distinct

25   crime from the Edgewater crime and any sentence this

1   Court imposes, for the same reasons I stated in my

2   record back in February 14th, 1997, shall run

3   consecutive to the sentence I impose.  I am not

4   changing that.

5           So the aggregate sentence with regards to

6   Counts One, Two -- Count Two and Three were merged.

7   So Count One, Two and Four are 30 years for

8   kidnapping, 20 years with a 10 stip date and five

9   years for the possession of the weapon.  They will

10  run concurrent.  The total aggregate of that is 30

11  years with 10 years period of parole ineligibility.

12          Now with regard to Count No. Seven, that

13  has been withdrawn by the Prosecutor's Office. You

14  have been found guilty of felony murder.  The felony

15  being kidnapping and Count Eight and Count Nine

16  felony murder, with regard to armed robbery on Count

17  Nine, involving the death of Mr. Politas.

18          I'm sentencing -- and I'm considering the

19  fact that now I have definitely before me, aside from

20  the other aggravating factors, you have a second

21  murder, which is a -- out of Rivers Edge, New York.

22  You were arrested on June 11th, 1997, Suffern County

23  New York on July 2, 1997.

24          You were sentenced to second degree murder

25  for 15 years to life on an -- a felony and that was

1   the death -- I don't know who that individual was,

2   but he was part of that whole rampage that you people

3   were on.  So now I have that to consider too, in

4   imposing a sentence here on the felony murder.

5           Count Eight and Count Nine will be

6   sentenced separately.  They do not now merge with

7   Count Seven as they did originally.  Count Eleven,

8   which is the armed robbery, will merge with Count

9   Twelve, being the possession of the gun -- of the

10  weapon, that is a gun, for unlawful purposes.  Count

11  Thirteen, the possession of weapon without a permit.

12  You -- I'm imposing a sentence of five years and that

13  will -- well, they'll all run concurrent.

14          All right.  It's the sentence of this

15  Court and I find that the aggravating factors

16  substantially outweigh the mitigating factors, as I

17  found originally.  They have not changed.

18          Nothing has changed, Ms. Farthing, except

19  that you are spending your last couple of years in

20  jail -- in prison and making the best of it which is

21  good.

22          On Count Eight, felony murder, you are,

23  hereby, sentenced to be placed in the custody of the

24  Commissioner of Corrections for the rest of your

25  life.  I'm giving you a life sentence on that with

1    30-year period of parole ineligibility.

2              On Count Nine, felony murder, regarding

3    the armed robbery.  You are sentenced to life

4    imprisonment with 30 years without parole.

5              On Count Ten, the kidnapping count of the

6    first degree, you will receive a 30-year sentence.  I

7    will not impose a stip on that.

8              Counts Eleven and Twelve merge for armed

9    robbery.  Count One, an armed robbery in the first

10   degree.  You're sentenced to 20 years with a 10-year

11   period of parole ineligibility as regards the Graves

12   Act.  There was use of a gun.  With regard to Count

13   Thirteen, possession of a gun without a permit.  You

14   will receive a sentence of five years.

15             The total aggregate of the -- on the Count

16   Eight, Nine, Ten, Eleven and Twelve merging and

17   Thirteen, they'll run concurrent with each other.

18   You will receive a life sentence, an aggregate of

19   life imprisonment with a 30-year period of parole

20   ineligibility and all of this will run consecutive to

21   the aggregate with -- regarding the -- Mr. Hipman's

22   robbery, which is 30 years with a 10-year parole

23   ineligibility.

24             When you total it all out, I come up with

25   life imprisonment with 40 years period of parole

1    ineligibility.

2              Is that what you get?

3         MS. BAGLIVI:  Yes.

4         MR. WEICHSEL:   Yeah.

5         THE COURT:  That is the aggregate sentence

6    in this case.  All other matters, the Victims of

7    Violent Crimes Compensation -- I think there might be

8    a problem in that one.  I just ran across it

9    because -- what did I impose?

10        MR. WEICHSEL:  I thought it was 2,500.

11        MS. BAGLIVI:  Well, $2,500 on VCCB.  So --

12        THE COURT:  Yeah.  I'm going to reduce

13   that.  I did get a case since then and that there has

14   to be a showing that she's able to pay that.

15        MS. BAGLIVI:  Even the VCCB?

16        THE COURT:  Yeah.  I was imposing it at

17   the time -- I did it with another case too, where I

18   felt the heinousness of the crime raised the VCCB,

19   but they -- I got it back and it said you can't do

20   this.

21        MR. WEICHSEL:  Oh.  So you had imposed a

22   2,000-dollar VCCB on Count Seven, which is now --

23        THE COURT:  So that's now dropped.

24        MR. WEICHSEL:  That's --

25        THE COURT:  That's out.

1              MS. BAGLIVI:  You're giving the minimum?

2              THE COURT:  No.  On the Violent Crimes,

3      it's -- the minimum is 100.

4              MS. BAGLIVI:  $100.

5              THE COURT:  So it's $100 on each one of

6      the violent crimes and $50 on the -- you know, for

7      example, the possession of the weapon without a

8      permit and we'll fix that up.  We'll add it all up,

9      but the $2,000 that I imposed upon the knowing and

10     purposely murder is now void also.

11             You have 45 days to appeal the sentence,

12     if you don't agree with it.  If you can't afford an

13     attorney, you can apply for the Public Defender's

14     Office for assistance.  As far as jail credit is

15     concerned -- and I'm not sure.  I guess this is a

16     sentence where she'll get jail credit for all the

17     time she's been in?

18             MS. BAGLIVI:  Right.

19             MR. WEICHSEL:  Yes, Judge.

20             THE COURT:  And she -- I think we have her

21     here starting when she was arrested on September

22     18th, 1994.  Is that when you were arrested?

23             MR. WEICHSEL:  That's --

24             MS. BAGLIVI:  It's August of '94.

25             MR. WEICHSEL:  September 18th is when she

Sentence                                          22

1   was arrested.

2                    THE COURT:  No, I have September 18th on

3   that.  The original presentencing.

4                    MS. BAGLIVI:  It was August.

5                    MR. WEICHSEL: She thought --

6                    MS. BAGLIVI:  Oh.  You know what?  You're

7   right.

8                    THE DEFENDANT:  It could be --

9                    MR. WEICHSEL:  No, it wasn't.

10                    THE COURT:  No, then we gave her seven

11   days more.

12                    MR. WEICHSEL:  Yeah.

13                    MS. BAGLIVI:  Right.

14                    THE COURT:  She was eight-eighty-one.

15                    MS. BAGLIVI:  Right.  She wasn't arrested

16   until some time after.  I was going by the date --

17                    THE COURT:  She was -- I gave her seven

18   days more.  No, no.  I gave her seven days because we

19   sentenced --

20                    MS. BAGLIVI:  The sentencing --

21                    THE COURT: -- her on --

22                    MS. BAGLIVI:  -- was moved.  Right.

23                    MR. WEICHSEL:  Right.

24                    THE COURT:  All right.  Ms. Farthing, good

25   luck.

1          MS. BAGLIVI:  Did you tell her about her

2    appeal?

3          MR. WEICHSEL:  What?

4          THE COURT:  Yeah, I have -- you have 45

5    days to appeal the sentence if you don't agree or you

6    can't afford an attorney, you can apply with the

7    Public Defender's Office.

8          MS. BAGLIVI:  Thank you.

9          (Proceedings concluded)

          I, STEFANIE LUCAS, the assigned
    transcriber, do hereby certify that the foregoing
    transcript of proceedings in the    Bergen County
    Superior Court on February 2, 2001, Videotape, as
    indexed by the Court, is prepared in full compliance
    with the current Transcript Format for Judicial
    Proceedings and is a true and accurate record of the
    proceedings.

                         Stefanie Lucas, Trainee

    Date: _____6/8/01_____

                         Proofed by:  Michele Vicaro, AD/T 352
                         RAPID TRANSCRIPT SERVICE, INC.